## BRYAN vs. WARE ET AL.

1. Where there is no conflict in the testimony, the court may, on the request of either party, charge the jury that, if they believe the evidence, they must find for that party.

2. Where an account which is barred by the statute of limitations is sent through the Post Office by the creditor to his debtor, at the request of the latter, who

does not respond to the letter for several years, nor make any objection to the account, it does not thereby become a *stated account*, so as to revive the debt and remove the bar of the statute of limitations.

3. To remove the bar of the statute of limitations, and revive a debt, requires either an express promise to pay, or a clear and distinct admission of a present or existing indebtedness.

Error to the Circuit Court of Montgomery.

Tried before the Hon. George Goldthwaite.

This was an action of assumpsit, brought by Bryan against Ware and others, survivors of S. M. Haggerty & Co., for services as an agent and attorney in procuring patents for Indian lands. These services were rendered in the years 1838, '39 and '40, and this suit was not brought until April, 1850. The defendants relied on the statute of limitations, and the plaintiff replied a subsequent promise.

The proof touching this point was as follows, as set out in the bill of exceptions:

"Plaintiff proved by Francis Bugbee, Esq., that on the 8th of June, 1847, he was authorized by Robt. J. Ware, one of the defendants, and a member of the company, to write a letter to the plaintiff and one Thomas J. Abbott, and that pursuant to said authority he did write a letter of that date to plaintiff and said Abbott. The following is a copy of said letter, which was produced and proven, viz:

"'The letter of Mr. Bryan was shown to Dr. Ware, and he requests me to say, that he has never received any letter from either of you to which he has not replied; that there was a division of all the funds of S. M. Haggerty & Co. made some years ago, and that nothing was left in his hands; that there are still some lands unsold belonging to S. M. H. & Co., and that from the proceeds of such lands, when sold, he desires the payment of all outstanding claims and demands, and for the purpose of ascertaining what these demands are, he desires both of you to forward to him your accounts; that he has paid Maj. Abbott considerable sums, and does not know what further demands there may be. He is anxious to have all old matters relative to Indian lands adjusted and settled as early as practicable. Very respectfully, &c.

(Signed) 'F. BUGBEE.'"

The defendants introduced evidence tending to show a payment by them to plaintiff of $100 in 1839, and $300 in 1840, on account of his said services. .

Defendants also proved, and introduced as evidence, a letter from plaintiff to said Ware, in the words and figures following, to wit:

"WASHINGTON CITY, June 19th, 1847.

"Dr. ROBERT J. WARE, Montgomery, Ala.:

"*Dr. Sir*—I wrote to Mr. Bugbee two days ago, informing him that both Maj. Abbott and myself had answered the interrogatories sent on in the case of Haden against you, in relation to the reserve of Cowe Hadjo. In Mr. Bugbee's letter enclosing the interrogatories he remarked, that you desired both Maj. Abbott and myself to send our accounts against S. M. Haggerty & Co. My account is as follows:

21 cases patents to S. M. H. & Co., at $50 each.... $1050 00
7 " " to S. M. H. & Co., and J. C. W. &
    Co., $25............................. 175 00
1 " Cowe Hadjo......................... 25 00
                                            $1,250 00

"Maj. Abbott says he will also send a statement of his account.

"In relation to the charges, I have to state, that when I was employed separately, I have never charged in any case when I contended with Watson, less than $100, when I succeeded in obtaining the patent. But as both Maj. A. and myself attended to these claims, I have charged but half the usual fee. I suppose that his charge will be the same. Iverson made the same charges against Watson & Co., as I am informed by Mr. Hanrick. I am exceedingly anxious that the matter should be settled, and settled, too, to your satisfaction. If, therefore, you should think the charge too high, please give me your views, and they shall meet with proper consideration. Do let me hear from you.

"Very truly yr. friend,
(Signed)                                   "JOS. BRYAN."

There was no evidence that said Ware had ever replied to said letter in any way, or had ever objected to said account as rendered in said letter. This was all the evidence in the case relating to the statute of limitations.

The counsel for defendants requested the court to charge, that notwithstanding they might believe all the evidence in the cause to be true, yet they must find for the defendants, on the ground that plaintiff's demand was barred by the statute of limitations. This charge the court gave, and the plaintiff excepted, and took a non-suit, agreeably to the statute.

The charge of the court given as aforesaid, is now assigned for error.

WATTS, JUDGE & JACKSON, for plaintiff in error.

J. E. BELSER, contra:

1. The action was commenced on the 12th April, 1850. The services sued for were performed by plaintiff in 1838, 1839 and 1840. The defendants in 1839 paid $100, and in 1840 $300 on account of said services. The statute of limitations was interposed to bar the recovery. All the evidence on this plea is in the bill of exceptions. The court did not invade the province of the jury. The charge asked for amounted to a demurrer to the evidence. Sims v. Sims, 2 Ala. 117; Deshler v. Cabiness, 10 ib. 959; 12 ib. 520; Townes et al. v. Ferguson, at January Term.

2. The letter written by Bugbee for Ware, on the 8th June, 1847, contains no such language as would revive a debt already barred by the statute of limitations. It is worded in the most cautious terms, and was intended not to get plaintiff's account alone, but also Abbott's, to whom it asserts large payments had been made by defendants for services sued for. Besides, if a promise to pay at all, it was *to pay out of certain lands when sold*, and the plaintiff on the trial failed to prove that these lands were sold. Where there is a conditional promise, the plaintiff must show that the condition has been performed. 9 Ala. 320; 6 ib. 776; 8 Porter, 213.

3. The letter of plaintiff to Ware, of 19th June, 1847, and which is relied on to defeat the plea of the statute of limitations, must be construed with reference to Ware's letter of the 8th June, 1847. The circumstances attending the said letter may make it a stated account, and still a stated account may be barred by the statute of limitations, without such a promise in connection with it as would revive a debt already

barred.  6 Ala. 518; 1 ib. 488; 11 Wheaton, 314; 10 Ala. 18; Townes et al. v. Ferguson, at January Term, by Justice Phelan.

4. The cases cited by the plaintiff's counsel fall far short, on this point, of the case at bar.  Besides, they contain, in most instances, admissions made before the statute had com- pleted the bar, and the admissions are stronger.  4 Porter, 223: 10 Ala. 959; 11 ib. 137; 3 ib. 600; 22 Pick. 291.

The mere statement of an account to facilitate investigation, is not a revival of a demand barred by the statute, and Ware's letter, written by Bugbee, was only intended to facilitate in- vestigation.  8 Porter, 213.

5. Query: Even if Ware promised to pay after the debt was barred, does a promise by him, when sued as a partner, bind the partnership, or even Ware individually, more espe- cially when the promise is a conditional one, as shown in this instance?  And it will be observed, that the suit is not brought against Ware on the promise, but against him with others as partners.  It would seem that, from the reasoning in the fol- lowing case as to plaintiffs, the same principle would apply as to defendants.  16 Ala. 448.

6. Ware, in his letter written by Bugbee, seemed to have not only the account of plaintiff, but also the account of Ab- bott, whom he treated as jointly concerned with plaintiff, and to whom he had made, as he says, large payments.  Suppose Abbott had presented his account, and it had shown that Ware had paid an equivalent to him for all the services ren- dered by plaintiff and him to the company, can it be con- tended that under the letter he intended to pay more money to them?

7. The letter of Ware written by Bugbee, means that Ware would pay the debt out of the land when sold, if anything was due, and nothing more.  It will be construed with refer- ence to the intention of the writer.

PHELAN, J.—Where there is no conflict in the evidence, it has been held by repeated decisions of this court, that the judge trying the cause may properly charge the jury on re- quest to find for one party or the other, as the case may be, if they believe the testimony adduced.  It is in the nature of

a demurrer to evidence. 7 Porter, 258; 2 Ala. 117; 6 ib. 752. We can discover no conflict in the testimony in this case, and the proper construction of the letters of Mr. Bugbee and Mr. Bryan, portions of the testimony, was matter for the court, as they were written evidence.

It is argued by the counsel for plaintiff in error, that a subsequent promise is to be implied from the receipt by Ware of this letter from Bryan, and his omission or neglect to answer it for so long a time. It is said, that an account furnished by one person to another, setting forth his claims, when received and not objected to for a length of time, is to be considered a just demand, and acquires the character of a *stated account.* Langdon v. Roane, 6 Ala. 518. Where a man is present and *states* an *account* with another, with whom he has had dealings, both parties, of course, admit expressly the correctness of the several items, and the balance *then* struck, and if the account was then barred by the statute of limitations, doubtless such a *stated account* would remove the bar. But are we to carry this doctrine to cases where an account, made up by one man and sent to another at a distance, is retained by the latter for a length of time without objection? We have been referred to no case, and upon principle we hold the thing not to be tenable. If you infer the original *correctness* of the account from such a state of facts, and the authorities seem to countenance that idea, it is going, in my opinion, full far enough, if not too far, except in special cases. But to *infer* from such a state of facts, not only the *original correctness* of an account barred by the statute, but also to go on piling inference on inference, and next infer a present *willingness* to pay such account, would be wholly inconsistent with the object and end of the statute of limitations, which is said to be to give repose against stale demands.

This brings us to the consideration of the letter written by Mr. Bugbee, under the instruction of Dr. Ware, to the plaintiff and Mr. Abbott. To remove the bar of the statute of limitations and revive a debt requires, according to the more recent current of decisions, either an *express promise to pay,* or a *clear* and *distinct admission of a present or existing indebtedness;* because, from such an admission, the law will *imply a promise* to pay, which in such case is equivalent to an *express promise*

to remove the bar. In the cases of Townes & Nooe, Ex'rs v. Ferguson, and Ross, Creditor, v. Ross, Adm'r *de bonis*, decided at the last term of the court, these questions have been recently considered, and the rule stated above adopted and followed, and the authorities there . cited can be referred to. Pray v. Garulon, 5 Shep. 145.

I have looked carefully into Mr. Bugbee's letter to Mr. Bryan, and I must say that I do not think it contains either an express promise from Dr. Ware to pay him anything, or a *clear* and *distinct* admission that he owes him anything. I regard it rather in the light of a letter worded with due care and caution, to avoid the very thing which the plaintiff in error seeks to establish by it, such an acknowledgment of an old account as would remove the bar of the statute of limitations. Dr. Ware, who knew the date of these services, manifestly did not mean to lose the vantage ground of the statute, and Mr. Bugbee, an experienced attorney, did not intend he should. He begins by informing Bryan that the funds of the firm had been divided—had nothing in his hands; but then, he proceeds to say, there are some "unsold lands," and out of the " proceeds of these," when sold, " he desires the payment of *all* outstanding claims and demands, and *for the purpose of ascertaining what those demands are*, he desires both you and Maj. Abbott to forward your accounts;" he adds, that he "has paid Maj. Abbott considerable sums, and does not know what further demands there may be. He is anxious to have all old matters relative to Indian lands adjusted and settled as early as practicable." I must say, I think that if the terms of this letter will revive the demands of Bryan and Abbott, they would equally deserve to revive every outstanding demand against the firm of S. M. Haggerty & Co. The object of this letter, as I construe it, was to get a sight of the demands of Bryan and Abbott, in order to pay them or not, as circumstances might dictate; and in so doing, carefully to avoid either a promise to pay, or such an acknowledgment of a debt as would remove the bar of the statute of limitations, under which they were then known to rest.

From what has been said, it follows, that the charge of the court below was correct, and the judgment is affirmed.