McREYNOLDS *vs.* JONES, Adm'r.

[APPLICATION TO SET ASIDE DIVISION OF SLAVES.]

1. *Partial distribution before lapse of eighteen months.*—If the widow, after dissenting from her husband's will, makes application for a division of the slaves, she cannot afterwards have the division set aside, because it was made before the lapse of eighteen months from the grant of administration.
2. *Construction of bill of exceptions.*—Where a bill of exceptions admits of two constructions, the appellate court will so construe it as to affirm, rather than reverse the judgment.

McReynolds v. Jones.

3. *Equitable conversion.*—Where a testator directs all his real estate to be sold, and all his slaves to be emancipated, and the widow dissents from the will, she cannot claim to have the land considered money in the allotment of her distributive share of the personalty, so that the provisions of the will respecting the emancipation of the slaves may be carried into effect.

APPEAL from the Probate Court of Wilcox.

THE record shows the following facts: The last will and testament of John McReynolds, deceased, was propounded for probate on the 4th September, 1854, by the executor therein named, and was admitted to probate on the 11th December following. By said will, the testator directed all his slaves to be carried to Liberia by his executor, and there emancipated; bequeathed $8,000 to his wife, "as her full portion and share" of his entire estate, and the residue of his estate to the children of his brothers and sisters, to be equally divided among them; and directed his executor to sell all his lands and personalty, not otherwise disposed of, and divide the proceeds of sale among his residuary legatees. On the 5th September, 1854, the widow filed her written dissent from the will, and claimed her distributive share of the estate. On the 25th September, 1854, Joseph C. Jones and Samuel L. Jones were appointed special administrators of the estate; and afterwards, on the 11th December, 1854, they were appointed administrators with the will annexed. On the 1st January, 1855, commissioners were appointed by the court, on the application of the widow, to divide the slaves belonging to the estate, and allot to her her portion. On the 15th January, 1855, as the next minute entry recites, the commissioners made their report, "which report was confirmed by the court, and ordered to be spread on the minutes." On the same day an order was made, on the petition of· the widow previously filed, for the allotment of her dower; and on the 19th January, the return of the sheriff and commissioners, relative to the allotment of dower, was ordered to "be confirmed, filed, and recorded." On the 22d January, 1855, an order was made, authorizing the administrators to sell the lands, on a credit of twelve months.

McReynolds v. Jones.

On the 14th February, 1855, the widow filed her petition, asking the court "to set aside the order appointing commissioners to divide the negroes belonging to said estate, and also the order made by the court on the return of the report made by said commissioners," on the following grounds: 1st, that said proceedings were had before the expiration of eighteen months from the grant of administration on said estate, and therefore the court could not take jurisdiction of the same; 2d, that said application was made by her under the apprehension that the property of the estate, other than slaves, was not sufficient to pay her distributive share; 3d, that said proceedings, if carried into effect, would defeat the provisions of the will respecting the emancipation of the slaves, which the court had no power to do, The administrators objected to the granting of this petition, because, 1st, the proceedings complained of were had on the application of the widow herself; 2d, that said proceedings were had in pursuance of law, and had been, "in effect, confirmed by the court." On the hearing of the petition, it was "ordered by the court, that said motion be refused, and that the report stand confirmed"; to which ruling of the court the petitioner excepted, and which is now assigned as error.

ROBERT H. SMITH, for the appellant.—1. The order for the division of the slaves is void, because it was made before the expiration of eighteen months from the grant of administration.—Code, § 1772. The probate court, being one of limited powers, must strictly pursue the statute.

2. The provisions of the will, respecting the emancipation of the slaves, created a valid trust.—Atwood's Heirs v. Beck, 21 Ala. 590; Abercrombie's Executor v. Abercrombie's Heirs, 27 Ala. 489. The widow's dissent from the will leaves it untouched, except so far as may be necessary to give her her statutory rights.—2 Lomax on Executors, 205; Mitchell v. Johnson, 8 Leigh, 400. The condition of the estate shows that the slaves can be emancipated, the widow have her distributive share, and the residuary legatees the remainder. That the land, directed to be sold, is converted into personalty, see

2 Story's Equity, §§ 790, 793, 1212, 1214; 2 Lomax on Executors, 220–2; 5 Barbour, 190; 2 Sandford's Ch. 341; 7 Barr, 287; 16 Ala. 67.

WATTS, JUDGE & JACKSON, *contra.* (No brief on file.)

STONE, J.—In considering this case, we propose to confine our investigations to the points made by the petition, as that is the foundation of the proceeding. We are thus relieved of all questions relating to the appointment of the administrators, the petition being silent in relation thereto.—Shackelford v. King, 25 Ala. 169.

It is true, as alleged, that the application by the widow, to have her share of the personal estate allotted and distributed to her, was premature. The estate had not been reported solvent under section 1771 of the Code, and the eighteen months contemplated by section 1772 had not expired. But we regard these provisions as intended for the protection and security of the administrator. If he does not object, we think the widow who procured the order, and who is benefited by coming earlier into the possession of her distributive interest, cannot be heard to complain.—*Ex parte* Edward Henry, 24 Ala. 638–648.

Bills of exceptions are to be construed most strongly against the party excepting; and where two constructions can be fairly entertained, we must adopt the one which will affirm, rather than that which will reverse the case. Barnes v. Mobley, 21 Ala. 238; Gaines v. Harvin, 19 Ala. 491; Bryan v. Ware, 20 Ala. 687; Sammis v. Johnson, 22 Ala. 690; Furlow v. Merrill, 23 Ala. 705; McElhany v. The State, 24 Ala. 71; Morris v. The State, 25 Ala. 57. We must also regard the record as importing absolute verity.—Deslonde & James v. Carter, June term, 1856.

The bill of exceptions shows that the probate judge made the following entry on his memorandum book, or blotter: "January 15th, 1855, Estate of John McReynolds, deceased. Commissioners appointed to divide negroes, make report, &c." It does not show, however, that this was all the evidence that the report had been confirmed, on which the probate court acted. Looking into the

record, on page 7, we find what purports to be a copy of an entry on the minutes, dated January 15th, 1855, the day on which the report was made, which affirms that the report was confirmed. There is nothing in the record which negatives the idea that both these pieces of evidence existed, and were produced on the trial in the court below; and under the rules above laid down, we are forced to the conclusion that they were. It is thus manifest that the commissioners' report of the division of the personal property was confirmed, before the petition of the appellant was filed.

The counsel for appellant has submitted a calculation, the object of which is to show that the dower and distributive interests of Mrs. McReynolds can be allotted to her *in value*, without disturbing the slave property; and as it was the evident design of the testator to manumit his slaves, as shown by the specific bequest to that effect, it is argued that it was the legal and bounden duty of the commissioners to so divide the property as to leave the express provisions of the will operative as far as practicable. The personal estate, other than the slaves, is not of value sufficient to pay the debts and expenses of administration, and leave a fund sufficient to pay the widow's share, which is one half the personalty. To make up this deficiency, the argument brings in the lands left after the allotment of the dower, and seeks to regard them as money, because they were devised to be sold.

We admit, in a proper case, the correctness of the principle contended for; viz., lands, devised to be sold, become, as to all persons who take under the will, money. So money, bequeathed to be laid out in land, becomes realty. See the authorities on appellant's brief. The argument, when applied to this case, proves too much. The will devised the entire real estate to be sold; and if this doctrine of conversion be applied to a part of the land, it should, for the same reason, be applied to the whole. This would have the effect of destroying the dower proper; and, instead of giving the widow a life estate in the lands, as the statute provides, it would confer on her the absolute title to the money for which the land should be sold.

Let us take another view of this question. If this doc-

trine be applicable to this case, it must govern all other similar cases. Suppose Mr. McReynolds had owed debts sufficient in amount to consume both his personal and real estate, and had devised his lands to be sold. Would it be contended, in such case, that the widow could not claim dower in the lands, but must take her chances for distribution out of the money? money that would be consumed before it reached her? Or, suppose the entire personal estate be bequeathed to be laid out in lands; will this have the effect of reducing the widow's distributive interest to a mere dower, or life estate?

We think the entire position indefensible. It rests on the erroneous assumption, that the widow can claim both against the will and under it.—Mitchell v. Johnson, 6 Leigh, 461. Section 1609 of the Code declares, that "the widow may in all cases dissent from the will of her deceased husband"; and in such case "take her dower in the lands, and of the personal estate such portion as she would have been entitled to in case of intestacy." Neither the letter nor the spirit of this section can be carried out, without according to the widow the same interest, and in the same form, as the statute confers in case of intestacy. Its purpose was, to place her claims entirely beyond her husband's control. To hold otherwise, would clothe the husband with power to bequeath specifically the most desirable half of his estate, and thus cast his widow upon the refuse for her distributive share.

There is no error in the record which is available to the appellant.

Judgment affirmed.