416 So.2d 986 (1982)
Mary E. HALL
v.
Lee Andrew McBRIDE, as Successor Executor of the Estate of William L. Hall, Deceased.
81-69.
Supreme Court of Alabama.
June 30, 1982.
*987 E. Graham Gibbons of Reid & Gibbons, Mobile, for appellant.
Charles Hoffman, Mobile, for appellee.
Charles A. Graddick, Atty. Gen., and Thomas R. Allison, Asst. Atty. Gen., amici curiae for appellant.
*988 FAULKNER, Justice.
William Hall died on May 25, 1979. On July 3, 1979, his wife, Mary E. Hall, filed for letters of administration on William Hall's estate, alleging he left no last will and testament. The letters of administration were issued on July 20, 1979. In August, Mr. Hall's sister, Anne Hall McBride, filed a petition to admit the last will and testament of Mr. Hall. The probate Court of Mobile County admitted the will to probate. Mary Hall, the widow, filed a dissent from the will pursuant to Code 1975, § 43-1-15. Anne McBride filed a motion to strike the dissent.
The Honorable John L. Moore, Probate Judge of Mobile County, granted Mrs. Hall's motion to strike the widow's dissent. The judge granted the motion to strike on the grounds that § 43-1-15 makes an unconstitutional gender-based classification. The probate court also refused to extend § 43-1-15 to those persons who were not explicitly extended protection, namely, widowers. Mary Hall, the surviving spouse, appeals.
Mary Hall married the deceased in 1945. Mrs. Hall returned to college in 1963 or 1964, and had lived apart from her husband since that timeapproximately seventeen years. Her income for the past few years has been approximately $15,000.00 annually. She designated herself as being single on her income tax returns for these years.
Two issues are raised on appeal: 1) Whether § 43-1-15 provides a constitutionally impermissible gender-based classification under the equal protection provisions of the United States and Alabama constitutions. 2) If yes, whether § 43-1-15 should be totally invalidated or whether the section should be expanded to provide benefits to the entire class of persons, surviving spouses.
It is clear that a statutory classification that distinguishes between males and females is "subject to scrutiny under the Equal Protection Clause." Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Nevertheless, the Supreme Court of the United States has had some difficulty in agreeing upon the proper approach and analysis in cases involving challenges to gender-based classifications. Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). The major area of conflict has centered on the proper level of scrutiny to apply to a statutory classification which places a burden on males which is not shared by females. Id.
The test often enunciated by the Court for determining the constitutionality of a gender-based classification is whether the classification bears a "substantial relationship" to "important governmental objectives." Id.; Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). In general, a statute will not be upheld if the statute makes "overbroad generalizations based on sex." A statute which is based on the legislature's misconceptions concerning the role of females in the home rather than in the "market place and the world of ideas" will not survive constitutional scrutiny. Craig v. Boren, 429 U.S. at 199, 97 S.Ct. at 457. A gender-based legislative classification carries "the inherent risk of reinforcing the stereotypes about the `proper place' of women and their need for special protection." Orr v. Orr, 440 U.S. at 283, 99 S.Ct. at 1113. "Thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored." Id. A statute based on notions of "romantic paternalism" and which carry "the baggage of sexual stereotypes" cannot withstand constitutional scrutiny. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1972).
On the other hand, the Equal Protection Clause does not "demand that a statute necessarily apply equally to all persons" or require "things which are different in fact ... to be treated in law as though they were the same." Michael M. v. Superior Court of Sonoma County, 450 U.S. at 469, 101 S.Ct. at 1204 (quoting Tigner v. Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 *989 (1940)). The Court has upheld statutes in which the gender classifications "realistically reflect the fact that the sexes are not similarly situated in certain circumstances." Id.; Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).
Alabama's statutory scheme on descent and distribution permits a widow to dissent from her deceased husband's will and take an amount equal to a widow's intestate share in personalty, and her dower portion of realty. Code 1975, § 43-1-15. At common law, a widow who was not satisfied with the portion her husband gave her in his will, could seek a writ of dower unde nihil habiut against the tenant of the freehold. If she established her right to the writ, she assigned her dower to the sheriff. Finally, an action of ejectment was brought against the current land holder. See Dean v. Hart, 62 Ala. 308 (1878); McLeod v. McDonnel, 6 Ala. 236 (1844). The widow's right to dower was in addition to the gifts or devises to the widow by her husband. Id. Section 43-1-15 and its predecessors changed the common law. The presumption is that a gift or devise by a husband in his will to his wife precludes the widow from receiving an intestate share.
The purpose of enacting § 43-1-15 is to protect the wife from a husband who would cut her from his will, leaving her with few or no assets for her support. See McGhee v. Stephens, 83 Ala. 466, 3 So. 808 (1887); McReynolds v. Jones, 30 Ala. 101 (1857).
"In the feudal system from which dower arose, the husband had complete control over family wealth; consequently, the widow was forced to depend upon her deceased husband's estate for support." Comment, Reverse Sex Discrimination Under Alabama's Law of Decedents' Estates, 32 Ala. L.Rev. 135, 150 (1980); see Jones, Alabama Probate LawNeed for Revision of Intestate Provisions, 20 Ala.L.Rev. 121 (1967). The purpose of § 43-1-15 is to put the claims of the widow "beyond her husband's control," thus protecting her from being left with little or no means of support. McGhee v. Stephens, 83 Ala. 466, 3 So. 808 (1887); McReynolds v. Jones, 30 Ala. 101 (1857).
In order to withstand scrutiny under the Equal Protection Clause, this gender-based classification must serve "important governmental objectives and must be substantially related to achievement of those objectives." Orr v. Orr, 440 U.S. at 279, 99 S.Ct. at 1111. Our next step is to examine the governmental objectives of the statutory scheme.
One obvious objective of the statute has its roots in romantic paternalismprotection of women because it is assumed that their role as wives and mothers leaves them financially helpless. The statute "effectively announce[s] the State's preference for an allocation of family responsibilities under which the wife plays a dependent role, and as seeking for [its] objective the reinforcement of that model among the State's citizens." Orr v. Orr, 440 U.S. 279, 99 S.Ct. 1111. The United States Supreme Court has stated repeatedly that such an objective which is part of the baggage of sexual stereotypes presuming certain roles of males and females in the home and the working world cannot sustain the constitutionality of statutes. See, e.g., Kirchberg v. Feenstra, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981); Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981); Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1972). The statute, if it is to survive constitutional attack, must be validated on some other basis.
It may be asserted that, like Alabama's gender-based alimony statutes, § 43-1-15, giving only a widow the right to dissent from the spouse's will, serves to reduce the economic disparity between men and women which is the result of our long history of discrimination against women. Furthermore, *990 it may be asserted that § 43-1-15 serves the purpose of assisting needy spouses. The United States Supreme Court has recognized that these are both important governmental objectives. See Orr v. Orr, 440 U.S. at 280, 99 S.Ct. at 1112; Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).
The final step in our analysis under the Equal Protection Clause is to determine whether the classification contained in the statute is substantially related to the aforementioned important governmental objectives. We hold that it is not.
In general, gender is not "a reliable proxy for need." Orr v. Orr, 440 U.S. at 281, 99 S.Ct. at 1112. The statute provides aid to women who are excluded from their husbands' wills, but no aid to men who are destitute and who are inequitably excluded from their wives' will. The statute also gives aid to widows who are not needy, to the exclusion of other needy devisees. Thus, the alleged purpose of the statute, to help needy spouses, could be fulfilled by a gender-neutral statute. "Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex." Orr v. Orr, 440 U.S. at 283, 99 S.Ct. at 1113.
In determining whether the classification is substantially related to the objective of reducing economic disparity between the sexes, we must ask "whether women had in fact been significantly discriminated against in the sphere to which the statute applied a sex-based classification, leaving the sexes `not similarly situated with respect to opportunities' in that sphere." Id. at 281, 99 S.Ct. at 1112 (quoting Schlesinger v. Ballard, 419 U.S. 498, 508, 95 S.Ct. 572, 577, 42 L.Ed.2d 610 (1975) (emphasis added). It is interesting to note that most commentators state that with few exceptions, the Alabama law of decedents' estates favors the widow. See Comment, Reverse Sex Discrimination, supra; Holt, Intestate Succession in Alabama, 23 Ala.L.Rev. 319 (1971); Jones, Alabama Probate Law, supra.
The statute does not achieve the goal of eliminating the economic disparity between men and women in all cases. Some widows may defy the stereotypes and be more wealthy than their husbands, and thus not need the benefit of the statute. Likewise, some widowers may have few assets; yet they cannot receive benefits under the statutory scheme. In sum, the goal of reducing the economic disparity between men and women could be achieved with a gender-neutral statute, based on need.
"[T]he statutory structure and its legislative history [reveal] that the classification was not enacted as compensation for past discrimination." Orr v. Orr, 440 U.S. at 281, n. 11, 99 S.Ct. at 1113, n. 11 (quoting Califano v. Webster, 430 U.S. at 317, 97 S.Ct. at 1194). It is clear that the widow's right to dissent had its origin in a time when women had no property rights. Women needed some protection of the law to prevent their husbands from transferring all assets that would provide women with a means of support. This is no longer the case. Women may, and do, freely build separate estates and freely transfer assets. In many cases, women may accumulate more wealth than their husbands. Thus, the historical roots of the right to dissent do not indicate that reduction of economic disparity was the purpose of the statute.
We hold that Alabama's statute permitting a widow to dissent from her husband's will is invalid, as an impermissible gender-based classification. We now turn to the second issue of whether to expand the underinclusive class.
When a statute is defective because of underinclusion, a court has two alternatives:
1) The Court may declare the statute a nullity, and order that its benefits not extend to the class, and

*991 2) The Court may extend the benefits of the statute to include those who are aggrieved by the exclusion.
This Court has permitted extension of the benefits of an underinclusive statute to the entire class on two occasions. Ransom v. Ransom, 401 So.2d 746 (Ala.1981); Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.), writ denied, 374 So.2d 898 (Ala.1979). Nevertheless, in Peddy v. Montgomery, 345 So.2d 631 (Ala.1977), and Parker v. Hall, 362 So.2d 875 (Ala.1978), this Court refused to extend the statute to the excluded class members.
In Ransom v. Ransom, 401 So.2d 746 (Ala. 1981), the Court stated the test for determining when to extend the coverage of a statute:
"The choice between invalidation of a statute or expansion of the scope of its applicability requires, of necessity, an ascertainment of the predominant legislative purpose underlying the statute's enactment. [Citation omitted.] That is to say, given the nature and substance of the statute, its relevant economic, social, and historical implications, can it be concluded that benefits should be terminated to the class of persons whom the legislature intended to benefit...."
(Quoting Orr v. Orr, 374 So.2d at 897.)
Applying this test, we think that the legislative history and the nature of the statute are such that the statute should be invalidated, leaving to the legislature the right to determine what sort of legislation is necessary in this field.
As § 43-1-15 has been interpreted, it is intended to apply only to females. In Gray v. Weatherford, 227 Ala. 324, 149 So. 819 (1933), this Court stated that even though the statutory scheme "may in special cases, work injustices, besides denying to the husband the same power of disposition of his estate which the wife has, remedy is with the Legislature, not the courts." The intent of the legislature, stated earlier in this opinion, was to prevent the husband from leaving the wife with no means of support. There is no indication that the legislature would favor including husbands in the class of persons who could dissent from a will.
Furthermore, the nature of the statute and the practical problems in applying the statute to husbands, mandate that the issue be left to the legislature.[1] Under § 43-1-15, the widow takes her dower interest in realty and her intestate share of personal property. What would the husband receive? Curtesy gives the husband a life estate in all of his wife's real estate, and one half of her personalty. Section 43-3-12. Nevertheless, dower is a one-third to one-half interest in realty only. Section 43-5-2, Code, 1975. Would a husband get a share equivalent to the wife's dower interest and her intestate share? The measure of the husband's interest is clearly a question *992 which the legislature is better equipped to answer. The Alabama statutes on decedents' estates are so complex and interwoven, that this court is ill equipped to tinker with their various parts, because doing so might have unanticipated and undesired effects on the entire statutory scheme.
Furthermore, the statute as it is now written does not differentiate between widows who are needy, and those who are not. The decision of what sort of provision should be made, and the standards for giving assistance to a needy spouse, are purely legislative decisions.
The purposes and legislative history distinguish this case from Orr v. Orr, 374 So.2d 895 (Ala.1979), and Ransom v. Ransom, 401 So.2d 746 (Ala.1981). In Orr, the Court stated that it encroached on the legislative function reluctantly. Only because of the importance of alimony, the volume of cases in which alimony was being sought, and the lack of time for the legislature to act, did the court choose to expand the benefits of the alimony statute to males. In the case of the widow's right to dissent, there is no pressing need to ensure we have such a statute.
The widow's right to dissent is also distinguishable from the homestead provision. Ransom v. Ransom, 401 So.2d 746 (Ala. 1981). In that case, it was clear that it would be the legislature's intent to extend the benefits conferred by the statute to both sexes. We have no evidence of such an intent or any indication of how to extend the benefits under the present statutory scheme.
Therefore, the judgment of the probate judge striking the widow's dissent is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., concurs specially.
SHORES, J., not sitting.
ALMON, Justice (concurring specially).
In my dissenting opinion in Peddy v. Montgomery, 345 So.2d 631 (Ala.1977), I expressed concern with this Court's approach in applying new and undeveloped constitutional standards to isolated state statutes without considering the impact on the entire statutory scheme of marital property rights. My plea was for judicial restraint at a time when these very issues were being nationally debated as a result of the proposed Equal Rights Amendment to the United States Constitution. This plea went unheeded by a majority of this Court. My concern was, and is, that many people will have their estate plans thwarted because of the piecemeal approach of the courts to this problem. Under our constitutional system these matters are peculiarly legislative in nature, and I consider judicial restraint, at times, to be extremely desirable.
The legislature, in April of this year, passed Act No. 82-399 (Regular Session, 1982). This Act takes effect January 1, 1983, and, among other things, deals with the elective share of surviving spouses. It would thus appear that women whose husbands die between the date of this decision and January 1, 1983, will not be able to dissent from their spouses' wills, as widows have previously been able to do and as widows and widowers will be able to do after January 1, 1983. I would not begin to speculate on the possible retroactive application of this Court's decision.
But be that as it may, the die is now cast and I see no need to dissent further. Therefore, I concur in the opinion of the Court.
NOTES
[1] The Alabama legislature recently enacted sweeping changes in our probate system, adopting much of the Model Probate Code. Section 2-201 of the new Alabama Probate Code deals with the elective share of the surviving spouse. The statute adds support to the proposition that the expansion of the class is beyond the abilities and the role of this Court. Section 2-201, Act. No. 80-329, provides:

"(a) If a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share of the estate. The elective share shall be the lesser of:
"(1) All of the estate of the deceased reduced by the value of the surviving spouse's separate estate; or
"(2) One-third of the estate of the deceased.
"(b) The "separate estate" of the surviving spouse shall include:
"(1) All property which immediately after the death of the decedent is owned by the spouse outright or in fee simple absolute,
"(2) All legal and equitable interests in property the possession or enjoyment of which are acquired only by surviving the decedent, and
"(3) All income and other beneficial interests (i) under a trust, (ii) in proceeds of insurance on the life of the decedent, and (iii) under any broad-based non-discriminatory pension, profit-sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer.
"(c) If a married person not domiciled in this state dies, the right, if any, of the surviving spouse to take an elective share in property in this state is governed by the law of the decedent's domicile at death."