678 So.2d 1084 (1995)
K.M.
v.
G.H.
STATE of Alabama ex rel. G.H.
v.
K.M.
2940266, 2940267.
Court of Civil Appeals of Alabama.
August 25, 1995.
Rehearings Denied October 13, 1995.
Certiorari Quashed June 14, 1996.
*1085 Calvin D. Biggers, Bessemer, for Appellant K.M.
William Prendergast and Lois Brasfield, Asst. Attys. Gen., Department of Human Resources, for Appellee/Cross Appellant (State).
Alabama Supreme Court 1950127 and 1950140.
ROBERTSON, Presiding Judge.
This is an appeal from a proceeding wherein the trial court declared an act of the legislature to be unconstitutional.
In 1992 and 1993, this court, in State ex rel. G.J. v. W.J., 622 So.2d 353 (Ala.Civ.App. 1992), and the Alabama Supreme Court, in Ex parte W.J., 622 So.2d 358 (Ala.1993), refused to allow the trial court to grant the defendant, who had been declared the legal father of a minor child, Rule 60(b), Ala.R.Civ. P., relief from a prior adjudication of paternity, even though the defendant had scientific evidence that he was not the father of the child.
In 1994, the Alabama Legislature enacted, and the Governor signed into law on April 26, 1994, Act No. 94-633, Ala.Acts 1994 (Act), codified as § 26-17A-1, Ala.Code 1975, which provides:
"(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father. The court shall admit into evidence any scientific test recognized by the court that has been conducted in accordance with established scientific principles or the court may order a blood test, or a Deoxyribose Nucleic Acid test of the mother, father, and child. Whenever the court orders a test and any of the persons to be tested refuse to submit to the test, the fact shall be disclosed at the trial, unless good cause is shown.
"(b) The test shall be made by a qualified expert approved by the court. The *1086 expert may be called by the court or any party as a witness to testify to the test results and shall be subject to cross-examination by the parties. The test results may be admitted into evidence. If more than one test is performed and the results are conflicting, none of the test results shall be admissible as evidence of paternity or nonpaternity.
"(c) Compensation of the expert witness shall be paid by the petitioner.
"(d) In the event the child has been adopted the matter of paternity may not be reopened under this chapter."
Based on this Act, K.M., the defendant in this paternity action, filed a petition to reopen this case because there was scientific evidence that he was not the father. Attached to the petition was a human leukocyte antigen (HLA) test which excluded him as being the father of K.H., the minor child at issue in this case.
In response to the petition, the State moved to dismiss, alleging that the Act had only prospective application. The trial court made the child a party to the action and appointed a guardian ad litem (GAL) for the minor child. The GAL challenged the constitutionality of the Act on the grounds that it is "vague, ambiguous and has a plain indeterminable meaning" and that it "creates a denial of equal protection under the laws." The State filed a memorandum brief, arguing that the Act applies prospectively only, that the Alabama Constitution of 1901 prohibits the retrospective application of the Act, and that the bastardization of children is against public policy. The GAL's memorandum brief argued that the Act violates the public policy of this state, that it denies the equal protection guaranteed under the Alabama Constitution of 1901 and the United States Constitution, and that it is vague and ambiguous.
K.M. argued in his reply brief that before the Act there existed a situation in which the Alabama appellate courts, in following the common law as in Ex parte W.J., supra, were "required to perpetuate an injustice. In other words, an injustice existed for which there was no relief available." K.M. contended that clearly, "these are the instances in which the legislature is bound to exercise its authority to make corrective measures. In this instance the corrective measure was to provide an extraordinary remedy under which a father-defendant may reopen a paternity case where there is [scientific evidence] that he is not in fact the father...."
Following oral argument of counsel and submission of the briefs, the trial court entered an order, finding (1) that the Act is unconstitutional because it violates the public policy favoring the legitimacy of children and the right to rely on finality of judgments; (2) that, through case law, the Alabama Constitution of 1901 provides for equal protection of the law to each citizen of this state and that the Act is unconstitutional on that ground; (3) that the Act is not so vague or ambiguous as to render it unconstitutional; and (4) that the legislature intended the Act to be retroactive in its application and that it was not unconstitutional on that ground (the State's motion to dismiss on this ground was denied). The trial court, ex mero motu, entered an amendment to the order, finding (5) that the Act violates the full faith and credit clause of the United States Constitution because of the Reciprocal State Enforcement of Duty to Support Act, URESA, an act originally enacted by the Alabama Legislature in 1951.
K.M. appeals. The State cross-appeals, raising one issue, the retrospective application of the Act. The GAL did not cross-appeal, consequently, there is no challenge to the trial court's finding that the Act is not vague or ambiguous.
For the background facts of this case, see E.B.M. v. V.W., 586 So.2d 230 (Ala.Civ.App. 1991). It is unnecessary to repeat all of those facts in this opinion, because the sole issue before this court is the constitutionality of the Act, i.e., § 26-17A-1, Ala.Code 1975.
We first point out that it is a well established principle of law that it is the duty of the trial courts and the appellate courts of this state to sustain the constitutionality of a legislative act unless it is clear beyond a reasonable doubt that it is in violation of the fundamental law. Crosslin v. City of Muscle Shoals, 436 So.2d 862 (Ala.1983).

*1087 PUBLIC POLICY

K.M. contends that the trial court erred in finding that the Act violates the public policy of the State of Alabama. The State argues that the Act violates the strong public policy which favors the legitimation of children and the public policy in favor of the finality of judgments.
We first note that pursuant to its authority, the Alabama Supreme Court promulgated Rule 60, Ala.R.Civ.P., which provides for relief from certain judgments and which, in certain cases, can affect the finality of judgments of legitimation. Ex parte State ex rel. McKinney, 575 So.2d 1024 (Ala.1990). Does the Alabama Legislature have equal authority to amend the Alabama Uniform Parentage Act, §§ 26-17-1 et seq., Ala.Code 1975, so as to provide for certain relief in order to undo an injustice in very special circumstances? We think so.
"When the legislature of a state has acted on a subject within constitutional authority, public policy is what the statute enacted says or indicates. Thus a constitutional statute cannot be contrary to public policyit is public policy." Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App. 691, 694, 282 So.2d 295, 298 (1973).
We find a part of K.M.'s brief on appeal, as it relates to the public policy established by this Act, worthy of quoting:
"In that regard, it is important to understand that these extraordinary remedies manifest a more important public policy than any of the ones cited by the Trial Court. That public policy involves ensuring public confidence in the edicts of our courts. It is quite obvious that where blatant injustices are allowed to stand, there is an erosion in public support [and] confidence in our court system. Accordingly, where, as in the instant case, the [defendant] can be conclusively established as a matter of fact not to be the father of a child and to be required to `in law' be the father of a child, it lessens the respect on which the decisions of the court are given. Thus, these extraordinary remedies which have been carved out by the legislature and the courts to attack judgments which are clearly inconsistent with the `finality of judgments,' are designed to provide mechanisms by which justice is assured. Their availability to correct obvious injustices within our Courts are an essential cornerstone of Anglo-American jurisprudence. It is axiomatic, that where there is no remedy, there is no right. In this regard, the Alabama Legislature was acting in accord with the most basic principles in our society in providing a remedy to correct an obvious injustice and vindicate a right. That remedy is narrowly circumscribed and of limited availability."
The trial court erred in holding that the Act violates the public policy of the State.

EQUAL PROTECTION
K.M. contends that the trial court erred in holding that the Act denies equal protection of the laws in violation of the Alabama Constitution of 1901 and the United States Constitution. We first point out that the trial court did not find that the Act violates the equal protection clause of the United States Constitution; instead, the trial court found that the Act violates the equal protection guaranteed to Alabama citizens by the Alabama Constitution of 1901 because it denies equal protection to fathers who are plaintiffs, and to mothers and children.
K.M. correctly points out that there is no equal protection clause in the Alabama Constitution of 1901. See Ex parte Bronner, 623 So.2d 296 (Ala.1993) (Houston, J., concurring in the result). However, our Supreme Court has held that "Sections 1, 6, 22, State Constitution; Amendment 14, Federal Constitution ... taken together guarantee the equal protection of the laws...." Pickett v. Matthews, 238 Ala. 542, 545, 192 So. 261, 264 (1939). Later, our Supreme Court held: "Sections 1, 6, and 22 of the Alabama Constitution combine to guarantee equal protection of the laws. The essence of the theory of equal protection of the laws is that all similarly situated be treated alike. An individual cannot be subjected to arbitrary exercise of governmental powers." City of Hueytown v. Jiffy Chek Co., 342 So.2d 761, 762 (Ala.1977) (emphasis added) (the 14th Amendment to the U.S. Constitution was *1088 omitted); see also Black v. Pike County Commission, 360 So.2d 303 (Ala.1978). "All similarly situated" individuals under this Act are defendants who have been declared the legal father of a child and who have scientific evidence that they are not the child's father; each has equal protection under this Act. The Act does not allow the trial court to arbitrarily apply the Act to certain defendant-fathers and to deny other similarly situated defendant-fathers relief under the Act.
Further, the Alabama Legislature is presumed to have acted within its constitutional power in passing laws, even though in practice their laws result in some inequality, and "a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it." State v. Colonial Pipeline Co., 471 So.2d 408, 412 (Ala.Civ. App.1984). Paternity proceedings are unique and different from all other legal actions. In ordinary civil actions there can be joint tort-feasors or disputable facts which may change as witnesses or parties age. In a paternity proceeding, however, there can be only one natural or biological father of a child. The legislature has liberally given many entities the right to bring paternity actions against putative fathers to determine paternity and to establish support for a child. See the Alabama Uniform Parentage Act, §§ 26-17-6 and 26-17-9, Ala.Code 1975.
The Alabama Legislature has now seen fit to enact legislation whereby, in exceptional cases and to remedy injustices, a defendant, who has been wrongfully accused and declared to be the legal father of a child but who later has scientific evidence that he is not the father, may reopen the case. Plaintiff-fathers, mothers, and children are also protected under the laws of this state when there is scientific evidence that the plaintiff-father is not the natural father, or that the defendant-father is not the natural father when the mother or some other entity was the plaintiff; they may seek Rule 60(b), Ala.R.Civ.P., relief. Ex parte W.J., supra. It is clearly within the legislature's power to enact laws to ensure justice and to correct an injustice under a prior act of the legislature and not be in violation of §§ 1, 6, and 22 of the Alabama Constitution of 1901, since "all similarly situated" individuals have equal protection under the Act.
We further point out that the Act extends protection to the mother and others. Section 26-17A-2 provides:
"In any decree setting aside an order of paternity pursuant to this chapter, there shall be no claim for damages against the court rendering the initial order of paternity nor any reimbursement or recoupment of money or damages against the mother, the State, or any employee or agent of the State."
The only kind of judgment that can be reopened or affected by this Act is a paternity judgment where the defendant has been wrongfully accused and there is scientific evidence that the defendant is not the father, i.e., the judgment is unjust. The relief is very limited; he can only reopen the case. § 26-17A-1. The Act cannot affect that judgment as far as money already paid to and received by the mother, because there can be no reimbursement or recoupment of money or other damages (false accusation) against the mother; the mother is protected under the Act. § 26-17A-2.
We point out that not only can scientific testing determine the non-existence or probable-existence of the father-child relationship, but it can also determine the probability of hereditary defects or diseases which may be detected and prevented in the child; therefore, the child benefits under this Act by the truth being established.
The trial court erred in holding that the Act violates the equal protection guaranteed to Alabama citizens by the Alabama Constitution of 1901.

RETROACTIVE APPLICATION
The State argues that the Act, if applied in the present case, will violate Art. IV, § 95, Ala. Const.1901, which provides that:
"There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement; and the legislature shall have no power to revive any right or remedy *1089 which may have become barred by lapse of time, or by any statute of this state. After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."
The State contends that the Act may not revive K.M.'s right to challenge the paternity judgment after having failed to file a timely appeal from the paternity judgment. Why would a defendant admit paternity and immediately file an appeal? In any case, no legal authority is cited to support the State's contentions on this issue; it is clear from the plain reading of the Act that it was intended to be applied retroactively. We affirm the trial court on this issue. Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala. 1981).

FULL FAITH AND CREDIT CLAUSE
The record and the pleadings do not reflect that any of the parties challenged the Act on this ground, unless it was done orally and without the benefit of a court reporter. Neither the State nor the GAL cites this court any authority in briefs to support this finding. Since the judgment at issue in this case is an Alabama judgment, no one had standing to challenge the constitutionality of the Act based on the Full Faith and Credit Clause of the United States Constitution. "[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." Clements v. Fashing, 457 U.S. 957, 966 n. 3, 102 S.Ct. 2836, 2845 n. 3, 73 L.Ed.2d 508 (1982) (citations omitted). Anyway, the trial court found the Act to be unconstitutional because of another legislative act, URESA, codified as §§ 30-4-80 through 98; however, no authority is cited for such a holding. Consequently, the trial court erred by holding the Act unconstitutional on this ground. We point out to the trial court that a constitutional act may be applied in an unconstitutional manner. Id.
We find that the State and the GAL have failed to establish by the necessary burden of proof that the Act is unconstitutional. The trial court erred in holding that the Act violates the public policy of this state, that the Act denies equal protection of the laws of this state, and that the Act violates the Full Faith and Credit Clause of the United States Constitution. The trial court did not err in holding the Act to be constitutionally retroactive. We hold that the Act is constitutional.
The trial court's judgment is affirmed in part and reversed in part, and this case is remanded for further proceedings pursuant to § 26-17A-1, Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
THIGPEN, J., concurs in the result.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I agree with the statement in Presiding Judge Robertson's opinion that it is our duty to sustain the constitutionality of a legislative act unless it is clear beyond a reasonable doubt that the act is in violation of fundamental law. I dissent because I believe it is clear beyond any reasonable doubt that the Act is unconstitutional. The Act subverts the principle of res judicata, denies equal protection of the laws to other similarly situated individuals, and violates the separation of powers provisions of the Alabama Constitution.

Res Judicata
The principle of res judicata bars a paternity plaintiff, mother or child, from relitigating her action against an exonerated paternity defendant, andunless Rule 60(b) affords reliefthat principle also bars a paternity defendant from relitigating the action. This court has already decided that K.M. is barred from relitigating the question of the paternity of K.H. In E.B.M. v. V.W., 586 So.2d 230 (Ala.Civ.App.1991), we held that the paternity issue in this case was res judicata.
The act undermines our holding in E.B.M. and subverts the principle of res judicata, an *1090 affirmative defense enumerated in Rule 8(c), A.R.Civ.P. The Act thereby violates Art. IV, § 95 of the Alabama Constitution, which states that "the legislature shall have no power to ... destroy any existing defense to [a] suit."
Presiding Judge Robertson's opinion emphasizes that the Act is a narrow remedy aimed at righting a specific injustice. The opinion fails to point out, however, that K.M. has already had at least two opportunities to right the injustice of being declared the legal father of a child who is not his biological offspring.
In 1986, the State of Alabama ex rel. G.H. filed a paternity action against K.M., alleging that K.M. was the father of K.H., a child born in 1985. K.M. acknowledged paternity and, on May 9, 1986, the family court entered a judgment of paternity and an order of support. K.M. did not appeal.
A year later, in 1987, K.M. filed a motion for relief from the child support order, and, in 1988, a motion to set aside the original paternity adjudication. He attached to his motions the results of an HLA blood typing test that excluded him as the natural father of K.H.[1] The family court denied his motions on August 16, 1988. K.M. appealed to the circuit court on October 19, 1988, but on March 29, 1989, the circuit court dismissed the appeal as untimely because K.M. did not file his notice of appeal within 14 days of the family court's order. See Rule 28(C), Ala. R.Juv.P. K.M. did not appeal that dismissal.
In 1990, K.M.'s parents attempted unsuccessfully to reopen the paternity case. They filed an action, styled as a petition by the minor child K.H. through her paternal grandparents, alleging that K.M. was not the father of K.H., and seeking to have the adjudication of paternity set aside. The family court ruled that the prior paternity adjudication was res judicata and dismissed the petition. K.M.'s parents appealed the dismissal, and this court affirmed in E.B.M. v. V.W..
K.M. did not appeal the 1986 adjudication of paternity or file a timely appeal from the denial of his 1987 and 1988 motions to have the paternity adjudication set aside. He has already had opportunities to prove his non-paternity of K.H. by scientific test results. He has simply failed to follow up on those opportunities. Under a "due diligence" analysis, K.M. would not be entitled to Rule 60(b) relief.
Unlike Rule 60(b), which requires that the moving party be diligent in protecting his interests and file a motion within four months or within "a reasonable time," the Act at issue here provides no time limit for reopening a paternity action and states no requirement regarding the defendant's diligence or lack of diligence in defending against the first action, filing an appeal, or seeking a blood test at the earliest opportunity.
At some pointand I think that point is defined within the parameters of Rule 60(b)the law must be more concerned with finality than it is with doing justice to one who is not diligent in protecting his own rights. There is "no general equitable doctrine... which countenances an exception to the finality of a party's failure to appeal." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981). In Moitie, the Supreme Court observed:
"The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply `no principle of law or equity which sanctions the rejection ... of the salutary principle of res judicata.'"
Presiding Judge Robertson's opinion states that the Act is an amendment to the Alabama Uniform Parentage Act (AUPA) and is no less constitutional than the AUPA. However, the AUPA outlines the parties who can initiate a paternity action; it does not mandate the reopening of a final judgment or void the defense of res judicata.

*1091 Equal Protection
I agree with Presiding Judge Robertson's observation that the essence of equal protection jurisprudence is that all similarly situated individuals should be treated alike. For purposes of this case, "other similarly situated individuals" are, at the very least, those persons who were parties to a prior paternity proceeding in which the outcome is contradicted by scientific evidence.
A plaintiff mother or child who has scientific proof that a man found not to be the father in a prior paternity action is in fact the father, is "identically situated" with a defendant who has been declared the legal father of a child but has scientific evidence that he is not the father. Each party claims the result of the paternity proceeding is unjust.
By allowing only the defendant to establish the justice of his claim, however, the Act treats a former paternity defendant (a male) differently from a former paternity plaintiff (most often a female or an illegitimate child). In equal protection analysis, statutory classifications based on gender or legitimacy are subject to an intermediate level of scrutiny; they must be "substantially related to an important governmental objective." Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988).
The objectives of the actto remedy the injustice of erroneous paternity determinations and to promote public confidence in the judicial systemare important ones. The classifications established by the legislature, however, are not "substantially related" to achieving those objectives. By allowing only one group of people affected by erroneous paternity determinationsdefendant "fathers"to refute those determinations with scientific evidence, the Act guarantees that the goals of truth and public confidence are achieved for only some of the erroneous judgments. Because the legislative classifications do not significantly advance the legislative goals of the Act, the classifications are not substantially related to achieving those goals, and the Act denies equal protection to the excluded categories of litigants. See Hall v. McBride, 416 So.2d 986 (Ala.1982); Orr v. Orr, 374 So.2d 895, 896 (Ala.Civ.App.), cert. denied, 374 So.2d 898 (Ala.1979).
"When a statute is defective because of underinclusion, a court has two alternatives:
"1) The Court may declare the statute a nullity, and order that its benefits not extend to the class, and
"2) The Court may extend the benefits of the statute to include those who are aggrieved by the exclusion."
Hall v. McBride, 416 So.2d at 990-91. See also Orr v. Orr, 374 So.2d at 896.
It might be possible to remedy the underinclusiveness of the Act by extending its benefits to mothers and children affected by erroneous paternity determinations. The reason for extending a statute's benefits to the excluded classes is to redeem a statute, which would otherwise be constitutional, from invalidity. In this case, however, curing the Act's equal protection infirmity would not restore it to constitutional health.

Separation of Powers
The Act suffers from another fundamental flaw. It violates the principles underlying Article III, §§ 42 and 43, of the Alabama Constitution of 1901.
Section 42 reads:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Section 43 reads:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men." *1092 The Act directs that "[u]pon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father." (Emphasis added.)
Over 125 years ago, the Alabama Supreme Court determined that the legislature could not, without violating the separation of powers provisions of the Alabama constitution, pass an act that required a trial court to reopen a case and grant a new trial. In Sanders v. Cabaniss, 43 Ala. 173 (1869), the court examined the constitutionality of a post-Civil War act "to declare void certain judgments, and to grant new trials in certain cases." 43 Ala. at 174-75. The act provided
"[t]hat any judgments or decrees rendered since the 25th day of May, 1865, when the original cause of action originated prior to that date, ... shall be opened on application [to the judge of the court having jurisdiction], accompanied with an affidavit that such cause of action did originate prior to the 25th day of May, 1865."
43 Ala. at 177. Our supreme court observed:
"If in passing this [act] the general assembly exercised a judicial, and not a legislative power; then we have no choice left to us in the matter, but are bound to declare it void.... All the powers of the government, under the constitution, belong properly and exclusively to either the one or the other of the departments named, and none of said powers can be both judicial and legislative."
The court held that the act was unconstitutional because it represented a "clear and undoubted exercise of judicial powers on the part of the legislature," 43 Ala. at 188, and, therefore, violated the separation of powers doctrine:
"[T]he manifest purpose of the legislature, in the passage of this act, was to effect an opening and setting aside of certain judgments and decrees, and to grant new trials and rehearings, by peremptorily commanding it to be done by the courts and judges, without permitting them to exercise any judgment in the matter....
"If there can be any doubts on this subject they are cleared away and removed, by reference to the title of the act, which is `An act to declare void certain judgments and to grant new trials in certain cases therein mentioned.' To do this is clearly to exercise a judicial, and not a legislative power; a power that legitimately belongs to courts and judges."
43 Ala. at 186. Observing that it was "constrained, by a high sense of duty," the Alabama Supreme Court reached the separation of powers question despite the fact that it was not argued as a ground for reversal by the parties. 43 Ala. at 188.
In Ratcliffe v. Anderson, 31 Gratt. 105, 72 Va. 105 (1878), the Virginia Court of Appeals struck down a similar act that authorized the reopening of judgments rendered since March 3, 1866. In that case, a debtor wished to reopen a cause after final judgment in order to show that he and his creditor had contracted with the understanding that Confederate currency was the standard of value, and that his debt should be reduced from its nominal amount to its post-War depreciated value. The Virginia court held:
"[T]he act is an attempted exercise of judicial power because it authorizes a court to reopen and review a case which has already passed into judgment. It is now too well settled to admit of serious dispute that the legislative department can no more exercise judicial power than that the judicial department can exercise legislative power. Each is supreme in the exercise of its own proper functions within the limits of its authority. The boundary line of these powers is plainly defined in every well-ordered government; and in this country it is now a well-established principle of law that the three great powers of governmentthe legislative, the executive, and the judicialshould be preserved as distinct from and independent of each other as the nature of society and the imperfections of human institutions will permit. That system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty." *1093 31 Gratt. at 107, 72 Va. at 107. The author of the opinion for the Virginia court continued:
"In the case before us the legislature interfered to provide a new remedy for the benefit of a class of persons to obtain a rehearing in suits in which judgments and decrees had been made, and became final against them....
"Both upon principle and authority I conclude that the legislature has no right, directly or indirectly, to annul in whole or in part a judgment or decree of a court already rendered, or to authorize the courts to reopen and rehear judgments and decrees already final, by which the rights of the parties are finally adjudicated,... and that every such attempt of legislative action is plainly an invasion of judicial power, and therefore unconstitutional and void."
31 Gratt. at 111, 72 Va. at 111.
In Lawson v. Jeffries, 47 Miss. 686, 12 Am.Rep. 342 (1873), the Mississippi Supreme Court held that the following legislative ordinance violated the separation of powers provisions of both the state and federal constitutions:
"[I]n all cases where judgments in the circuit courts and decrees in the chancery or probate courts of this state have been rendered since the 9th day of January, 1861, and prior to this date, the party against whom such judgment or decree has been rendered, ... shall be entitled to a new trial upon filing an affidavit that he or she had no attorney or counsel present at the time of the rendition of said judgment or decree, and that he or she believes that said judgment or decree is unjust."
47 Miss. at 691, 12 Am.Rep. at 343. The court framed the question presented as follows: "whether ... any legislative body can, by an ordinance or statute, award a new trial absolutely." 47 Miss. at 694, 12 Am.Rep. at 345. The court answered that question in the negative, holding that the ordinance was "a judicial, and not a legislative act, and, therefore, unauthorized." 47 Miss. at 693, 12 Am.Rep. at 345.
In holding the ordinance beyond the scope of legislative authority, the Mississippi court rejected the following arguments, which have, in substance, been made in the case now before us: (1) that "[t]he allowance of a new trial ... gives the opportunity of ascertaining the righteousness of judgments under circumstances presumed to be more favorable to investigation," 47 Miss. at 688 (here, a new trial for K.M. gives the court the opportunity to ascertain the true paternity of K.H. by using scientific test results not introduced at the first paternity proceeding); and (2) that "the [legislative body] did not grant new trials. It provided by law for the granting of new trials by the courts on a proper showing by a party to the suit," 47 Miss. at 689 (here, a new trial is available for K.M. only if he presents scientific evidence that he is not the father of K.H.). The Mississippi court concluded:
"`If a review of such judgments may be ordered for one cause, it may be equally so for another, or any cause within the discretion of the legislature.' ... If a legislative body may grant a new trial, it may order a continuance, annul a judgment, suspend a trial, direct the judgment to be entered, and otherwise interfere with the discretion and independence of the judiciary. The evils that would flow from such an assertion of legislative power are too apparent to be enumerated...."
47 Miss. at 701, 704, 12 Am.Rep. at 351, 353.
Long before the post-Civil War "new trial" cases, the proposition that a legislature could not, without violating the separation of powers doctrine, order a court to grant a new trial was established. In Merrill v. Sherburne, 1 N.H. 199, 8 Am.Dec. 52 (N.H.1818), the Supreme Court of New Hampshire considered the constitutionality of a statute granting a new trial to the losing party in a probate proceeding. The court noted that the act "does not empower the court in their discretion to grant or refuse a new trial; but directs that `the cause shall be heard' again; and thus amounts to an absolute reversal of the judgment...." 1 N.H. at 202, 8 Am. Dec. at 55. The New Hampshire court stated that "[s]uch being the operation of the act, it becomes proper to examine ... [w]hether the passage of it was not an exercise of judicial powers." 1 N.H. at 203, 8 Am.Dec. *1094 at 56. An examination of that question prompted the court to observe:
"The grant of a new trial belongs to the courts of law from immemorial usage. The power to grant a new trial is incidental to their other powers. It is a judgment in relation to a private controversy, affects what has already happened, and results from a comparison of evidence and claims with the existing laws. It will not be denied that the consideration and decision by the superior court, of the motion for this same new trial was an exercise of judicial power. If so, a consideration and decision upon the same subject by the legislature must be an exercise of power of the same description; for what is in its nature judicial to-day, must be judicial tomorrow and forever. The circumstance, also, that the legislature themselves did not proceed to make a final judgment on the merits of the controversy between these parties, cannot alter the character of the act granting a new trial. To award such a trial was [a] judicial act."
1 N.H. at 205, 8 Am.Dec. at 57-58. The court concluded that the act was a violation of the separation of powers principles that guaranteed three independent branches of government. It explained:
"One prominent reason for creating the judicial distinct from the ... legislative department, was that the former might determine when laws were thus `repugnant [or contrary to the constitution],' and so operate as a check upon the latter, and as a safeguard to the people against its mistakes or encroachments. But the judiciary would in every respect cease to be a check on the legislature if the legislature could at pleasure revise or alter any of the judgments of the judiciary. The legislature, too, would thus become the court of last resort, `the superior court,' or `supreme judicial' tribunal of the state...."
1 N.H. at 210, 8 Am.Dec. at 57-58, 61-62 (emphasis added). The New Hampshire court emphasized that its conclusion did not "by any means suppose a superiority of the judicial to the legislative power." 1 N.H. at 201, 8 Am.Dec. at 55. Instead,
"[i]t only supposes that the power of the people is superior to both; and that where the will of the legislature, declared in its statutes, stands in opposition to that of the people, declared in the constitution, the judges ought to be governed by the latter rather than the former."
1 N.H. at 201-02, 8 Am.Dec. at 55.
In 1952, the Alabama Supreme Court once again held that the legislature had violated the separation of powers doctrine by enacting a law that required the circuit courts to grant new trials under certain circumstances. Title 15, § 305, Code of Alabama 1940, provided that if the prosecutor in a criminal case made any comment on the accused's failure to testify, then "a new trial must be granted on motion filed within thirty days." See Broadway v. State, 257 Ala. 414, 60 So.2d 701 (1952).
In Broadway, the court reasoned that the power of the circuit court to grant new trials derives from the constitution and not from the legislature; therefore, "the legislature cannot take from courts power which it does not give." 257 Ala. at 418, 60 So.2d at 704 (emphasis added by the court in Broadway). The court concluded:
"It is with great regret that we are constrained to declare, as we have rarely done, that a legislative enactment hampers the orderly functions of constitutional courts in this State, but it becomes necessary for us to do so when a case arises, and we are satisfied beyond a reasonable doubt that such is a proper interpretation of the situation.
"To give [the statute] the effect which its language imports is to deprive the circuit court of its constitutional power to function in a judicial way in that respect. It cannot be rightly conceived that there is legislative competency to create a duty on the part of such a court without exercising any discretion or judgment, when a performance of that duty is an exercise of the judicial function, and if it is performed a compliance would result in the duty to perform a ministerial act on the part of the court to grant a motion for new trial.... Such, it seems to us, is so plainly an infringement by legislative power upon judicial *1095 power that we cannot afford to labor under it. The Constitution which created the circuit court and this Court did not contemplate that it should be required to act ministerially in passing upon the rights and liberties of parties before those courts, when such act calls for a judicial function."
Broadway, 257 Ala. at 418, 60 So.2d at 704-05 (emphasis added).
More recently, in Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414 (Ala. 1991), our supreme court declared unconstitutional, on separation of powers grounds, a statute that removed the presumption of correctness from post-verdict review of punitive damages awards. Armstrong challenged the constitutionality of the statute on a number of grounds, but he did not raise the separation of powers issue. The Alabama Supreme Court noted that "[n]ormally, a court will not hold a statute unconstitutional except on a basis specifically argued by a party and necessarily presented in the case." It observed, however, that "[t]his case presents a unique situation, however, because, ... [i]f the [challenged statute] violate[s] the principle of separation of powers, that violation affirmatively intrudes into the judicial process even though §§ 42 and 43 of the Constitution have not been argued." Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d at 416.
I have found few other 20th century decisions holding that legislation mandating the reopening of a judgment or the granting of a new trial violates the separation of powers doctrine. The scarcity of recent cases, however, only convinces me that the proposition is so well established that it is no longer seriously open to question. In addition to the decisions of our own supreme court in Broadway v. State and Armstrong v. Roger's Outdoor Sports, Inc., the supreme courts of Georgia and Massachusetts have also recently addressed the issue. See Jenkins v. Jenkins, 233 Ga. 902, 214 S.E.2d 368 (1975); Spinelli v. Commonwealth, 393 Mass. 240, 470 N.E.2d 795, 796 (1984).
In Jenkins, the Georgia court dealt with a challenge to a statute that changed the age of majority from 21 to 18 years. The statute provided that it had no effect on judgments entered before the effective date of the act. A father obliged by a divorce judgment to support his child until the age of majority argued that the statute discriminated against fathers who had been divorced before the effective date of the act. Rejecting that argument, the Georgia Supreme Court observed that the statute could not have applied to judgments before the act took effect because "[t]he `legislature has no constitutional power to construe or alter judgments.' "233 Ga. at 903, 214 S.E.2d at 369 (citation omitted).
In Spinelli, the Massachusetts court struck down a statute that would have restored a dismissed case to the active docket of a trial court. The court observed:
"The Legislature apparently felt that the judgment of dismissal unjustly deprived the plaintiff of his right to seek compensation for the taking of his property. To remedy that perceived injustice, it attempted to nullify the judgment by legislatively restoring the case to its status before the judgment was entered. But `[t]he judgment of a court must stand as final. It can be reversed, modified or superseded only by judicial process. It is wholly under the control of the judicial department of government. The Legislature cannot "supersede" a judgment of a court by its direct declaration to that effect.' Because the effect of [the statute] would be to annul the Superior Court judgment dismissing the case, the statute is an attempt by the Legislature to exercise a power that is exclusive to the judiciary, and thus the statute violates [the separation of powers provision of the Massachusetts constitution]."
Spinelli, 393 Mass. at 242, 470 N.E.2d at 796 (citation omitted). Holding that "[m]anifestly it is the exercise of judicial power to grant a new trial or a rehearing in a cause in the courts," 393 Mass. at 242, 470 N.E.2d at 796, the court further observed:
"The Legislature may, in some circumstances, provide a legislative remedy where the courts have determined there is no judicial remedy. It may not, however, instruct a court to provide a judicial remedy when that court has concluded that *1096 there is none, without violating [the separation of powers doctrine]."
393 Mass. at 243, 470 N.E.2d at 797 (emphasis added).
The continued and unquestioned validity of the proposition that a legislature cannot order a court to reopen a final judgment and grant a new trial is further attested to by Professor Moore, in his treatise on the Federal Rules of Civil Procedure:
"The separation of powers doctrine precludes a state legislature from invading the province of the state judiciary by annulling, modifying, or impairing a final judgment rendered by a court of competent jurisdiction of that state."
J. Moore, 1B Moore's Federal Practice ¶ 0.406[2] at 281 (2d ed.1991).
In 1869, the Sanders v. Cabaniss court surmised that the Alabama legislature may have been moved to enact a law to reopen judgments that became final during the Civil War "by their sympathies, because of the embarrassed and suffering condition of the country." 43 Ala. at 189. I surmise that, in 1994, the Alabama legislature may have been moved to enact the Act by its indignation over the injustice of requiring a man who has scientific proof that he is not the father of a child to support that child. The Sanders v. Cabaniss court concluded, however, that "good intentions can not make an act valid, which the constitution declares void," 43 Ala. at 189. Under our constitution, I think this court must come to the same conclusion.
Despite the fact that the separation of powers issue was not specifically raised in this case, I believe that there are two reasons why the issue should be addressed. First, it is theoretically possible to remedy the underinclusiveness of the Act and thereby cure the equal protection flaw in the Act, by extending its benefits to the excluded classes. That course of action would be fruitless, however, ifafter the extension of benefitsthe Act were still fundamentally flawed.
Second, while I agree with the Alabama Supreme Court that "[n]ormally, a court will not hold a statute unconstitutional except on a basis specifically argued by a party and necessarily presented in the case," Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d at 416, I find that this case, like Armstrong, "presents a unique situation, ... because,... [i]f the [challenged statute] violate[s] the principle of separation of powers, that violation affirmatively intrudes into the judicial process even though §§ 42 and 43 of the Constitution have not been argued." 581 So.2d at 416.
"[I]t has been the firm understanding of the courts in the interpretation of the constitution that those courts which derive their existence from the constitution, succeeding common law courts of historic origin, cannot have their functions and their orderly processes disturbed by any legislative enactment." Ex parte Huguley Water System, 282 Ala. 633, 639, 213 So.2d 799, 805 (1968). "[S]carcely ... any function ... strikes closer to the heart of the judicial power" than the ability to grant or to deny a motion for new trial. Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d at 418.
When the judiciary ignores the encroachment on judicial processes that the Act represents, it undermines the system of checks and balances built into our system of government. "Courts have always exercised inherent power to protect [their] adjudicatory processes, to control such processes, [and] to ward off encroachments upon recognized judicial functions." Morgan County Comm'n v. Powell, 292 Ala. 300, 306, 293 So.2d 830, 835 (1974). Accord Agran v. Checker Taxi Co., 412 Ill. 145, 149, 105 N.E.2d 713, 715 (1952) ("[i]t is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department"). "The concept of inherent power is not some device created by a power-hungry judiciary, but is a doctrine that is concomitant to the very structure of our tripartite form of government." Morgan County Comm'n v. Powell, 292 Ala. at 319, 293 So.2d at 847 (Heflin, C.J., dissenting). Because I firmly believe that "[t]hat system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty," Ratcliffe v. Anderson, 31 Gratt. at 107, 72 Va. at 107, I conclude that the independence *1097 of both the legislative and the judicial departments would be advanced by holding that the Act violates the separation of powers principles underlying §§ 42 and 43 of the Alabama Constitution.
Justice Houston, dissenting in Armstrong v. Roger's Outdoor Sports, Inc., criticized the majority for reaching a constitutional issue that had not been raised below, but even he appeared to agree that a court may reach an unpresented constitutional question "if the law is so settled that awaiting a proper constitutional challenge would be an exercise in futility." Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d at 428 (Houston, J., dissenting). Here, the law is settled: the legislature may not, without violating the separation of powers doctrine, order a court to reopen a final judgment and grant a new trial. Based on the foregoing authorities, I believe that the Act violates §§ 42 and 43 of the Alabama Constitution of 1901 and is, therefore, unconstitutional.
NOTES
[1] This test, dated 1987, was also attached to his present motion to reopen the paternity proceedings.