THIGPEN, Judge.
This case involves paternity proceedings.
The record reveals that in July 1981, the Juvenile Court of Russell County entered an order declaring W.J. to be the father of a minor child born to G.J., based on W.J.’s admission of paternity in open court. W.J. was ordered to pay $20 per week for support and maintenance for the child, and in 1989, that amount was increased to $40 per week. W.J. did not appeal the order of paternity nor either of the subsequent child support orders.
The record further reveals that in March 1990, W.J. initiated an action seeking relief from the 1981 paternity adjudication by alleging that the results from privately-conducted blood tests proved he could not possibly be the father of the child. An order was entered setting aside the 1981 order of paternity and the support obligation, and stating that a DNA Probe Analysis provided clear and convincing evidence that W.J. was not the father of the child. The State of Alabama, on behalf of G.J., filed a motion to alter, amend, or vacate that.order. Following the denial of that motion, an appeal was taken to the Russell County Circuit Court for a trial de novo.
The State filed a motion for summary judgment alleging, inter alia, that W.J.'s action was untimely under Rule 60(b), Alabama Rules of Civil Procedure, that the issue of paternity was res judicata, and that a motion filed pursuant to Rule 60(b), A.R.Civ.P. cannot be used as a substitute for an appeal. In denying the State’s motion, the trial court’s order stated that “this case is closely akin to the situation in Ex Parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990).” See also Ex parte State ex rel. McKinney, 575 So.2d 1024 (Ala.1990). The order also suggested that W.J. could amend his petition to include a Rule 60(b) motion. W.J.’s amended petition alleged, inter alia, that it was scientifically impossible for W.J. to be the father of the child, and requested relief from the paternity order due to “newly discovered evidence” and “the fraud and misrepresentations” of the mother.
The State responded in opposition to that amended petition and filed a motion to suppress the blood tests, arguing that the test results presented to the court were not HLA blood tests as alleged by W.J., but were the results of a DNA Probe Analysis. The State challenged the accuracy of the procedure and the test results and again asserted the doctrine of res judicata.
W.J.’s request for the trial court to order the parties and the child to submit to HLA blood testing was granted, but his motion to appoint a guardian ad litem for the child was denied. The State’s motion to suppress WJ.’s DNA results was granted. After the results of the court-ordered blood tests were returned, the State filed a motion to suppress the results, and W.J. filed a motion for summary judgment. Following a hearing, the trial court denied both motions. The results of the court-ordered blood tests excluded W.J. as the biological father of the child.
The trial court empaneled a jury, and after an ore tenus proceeding, the jury returned a finding that W.J. was not the father of the child. The trial court entered a judgment accordingly, and the State appeals.
The State argues that the doctrines of res judicata and estoppel should have been applied to prevent re-litigation of the issue of paternity, since the 1981 order established that W.J. is the legal father of the child. The evidence is undisputed that W.J. freely acknowledged being the father of the child prior to the entry of the 1981 order and thus chose to accept the responsibility of being the child’s legal father.
*355 The State also argues that the trial court abused its discretion in granting W.J.’s motion for relief pursuant to Rule 60(b), A.R.Civ.P. The State contends that this case presents no grounds for relief under any of the reasons specified in the rule. Specifically, the State argues that the blood tests, which were recently obtained, were waived by W.J. in 1981 when he freely and voluntarily chose to acknowledge paternity of the child and these test results cannot now be considered as “newly discovered evidence.” The State argues that the rule cannot be utilized to relieve one from the consequences of a deliberate choice, nor to substitute for one’s failure to appeal a previous judgment. The State also argues that there are no extraordinary circumstances presented in this case to allow the case to fall into the safety net provided by the catchall “any other reason justifying relief” language of the rule.
W.J.’s own testimony reveals that W.J. willfully acknowledged paternity and has accepted legal responsibility for this child since the child’s birth in 1978, in spite of having doubts whether he was the child’s biological father. W.J. testified that at the time the child was conceived and born, W.J. was about 22 years old, he was attending college, and he offered to pay for the mother to have an abortion. He testified that although he had doubts, he chose to tell the judge that he was the child’s father because he did not want to have a trial. W.J. further testified that he has been consistent in paying the court-ordered child support payments, and that he has often provided other necessities, gifts, and extras, including clothes and toys, for the child, for over a decade. W.J. also testified “I was buying everything until I went and had a blood test.” W.J. testified that he would see the child “every now and then” and that the child knew W.J. was his father. There was other evidence introduced showing that on occasions, W.J. and the child had visited with W.J.’s mother. W.J. testified that he had recently been saved and that because God had told him he was not the father of the child, he had the blood tests performed and began legal action to challenge the issue of paternity for the first time.
The record is clear that W.J. knew he could have challenged the issue of paternity in 1981, yet he chose to admit paternity and has paid the court-ordered child support since that time, in addition to voluntarily providing other things for the child. W.J. testified that nothing prevented him from obtaining legal advice and challenging paternity in 1981. He chose not to appeal the 1981 paternity adjudication, nor did he question paternity in the 1989 support modification action, nor did he appeal the 1989 order, which increased his child support obligation.
The record evidence discloses that a few months after the increase in child support was ordered, W.J. decided to challenge the paternity for the first time, and he secretly obtained blood tests. Record testimony indicates that W.J. deceived both the mother and the child by telling them that he was taking the child shopping for a game which the child desired, but instead took the child to a doctor for blood testing, without the knowledge or consent of the mother. After obtaining the results of the blood tests, W.J. legally challenged the paternity for the first time since the child’s birth.
The remedy available pursuant to Rule 60(b), A.R.Civ.P., “is an extreme remedy to be used only under extraordinary circumstances.” Ex parte State ex rel. Morris, 571 So.2d 1146, 1148 (Ala.Civ.App.1990). Absent an abuse of discretion, the decision of the trial court whether to grant or deny relief pursuant to Rule 60(b), A.R.Civ.P. will not be reversed. Morris, supra. One of the grounds must be alleged and proved and the trial court must balance the need to remedy the injustice against the need for the finality of judgments. Morris, supra. On appellate review, “this court looks to the grounds presented by the motion and to the matter presented in support of the motion” in determining whether there was an abuse of discretion. Morris at 1148; see also Ex parte State ex rel. Smith, 540 So.2d 69 (Ala.Civ.App.1989).
*356 In the instant case, it appears that the trial court considered WJ.’s motion within the “any other reason” provision of Rule 60(b)(6), A.R.Civ.P. Such an extreme remedy is to be used only under extraordinary circumstances. See Committee Comments following Rule 60, A.R.Civ.P.; Morris, supra. It is not a substitute for appeal, nor is it available to relieve a party from its own deliberate choices. City of Daphne v. Caffey, 410 So.2d 8 (Ala.1981); Ex parte Personnel Board of Jefferson County, 513 So.2d 1029 (Ala.Civ.App.1987).
The application of the doctrine of res judicata to paternity cases is well-settled with very few exceptions. K.W. v. State ex rel. S.G., 581 So.2d 855 (Ala.Civ.App.1991). While there have been cases where paternity adjudications have been allowed to be challenged via a motion pursuant to Rule 60(b), A.R.Civ.P., see Ex parte State ex rel. McKinney, 575 So.2d 1024 (Ala.1990); K.W., supra; and Coburn v. Coburn, 474 So.2d 728 (Ala.Civ.App.1985), the case of K. W. clearly cautions that each action “must be considered by the court according to the elements of a Rule 60(b)(6) motion as defined by the rule and as we discussed in [Coburn v. Coburn, 474 So.2d 728 (Ala.Civ.App.1985)].” K.W. at 858.
In Coburn, supra, this court affirmed a trial court’s decision to set aside a paternity adjudication. In that case, a divorce decree contained an agreement of the parties that the husband was not the father of the only child born during the marriage. The husband was later allowed to have that decree set aside, to challenge paternity, to obtain blood tests, and to ultimately legitimize a child, who had been bastardized by the parties’s agreement. Writing for the majority, Judge Wright stated
“We emphasize that our holding in this case does not overrule our prior holdings that an adjudication of paternity is generally res judicata.... Under the unique circumstances of this case, however, wherein the father was attempting to legitimate the child he and his wife had bastardized by their divorce agreement, public policy and principles of equity and justice allow the setting aside of the bastardizing decree and the retrial of the paternity question.”
Coburn at 731.
The facts in Ex parte ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990), also provided extraordinary circumstances warranting relief from a paternity adjudication. There, the father had no valid reason to question paternity until years later when it was discovered that he was sterile due to a physiological birth defect. In that case, the child was born out-of-wedlock, the father admitted paternity without proof, and he did not challenge paternity until twelve years later when the defect was discovered. The evidence revealed that there was no family unit to protect from disruption. There was also evidence that although the father had been ordered to pay $12.50 weekly child support, he had actually paid very little money for the child’s support, he was more than $4200 in arrears, and there was no reliance on the support payments. The father maintained that denying relief under his unique and exceptional circumstances would cause him to suffer extreme hardship and injustice. This court determined that “the facts in the case at bar support the request for extraordinary relief authorized by Rule 60(b)(6).” McKinney, 567 at 370.
The case of K.W., supra, involves circumstances in which K.W. was adjudicated the father of the child by his own admission in January 1985. In November 1988, the mother told K.W. that he was not the father and the parties acquiesced to submit to blood tests, which excluded K.W. from being the biological father. Similar to McKinney, supra, there was nothing to indicate that K.W. knew or should have attempted to discover that he was not the child’s father until the 1988 disclosure by the mother. The McKinney rationale was utilized to allow relief from the paternity adjudication.
Those cases allowing a prior paternity adjudication to be reopened and relitigated are factually distinguishable from the case at bar. In the instant case, W.J. testified to doubting the paternity of this child from the time he learned of the mother’s preg *357 nancy, yet delaying many years to challenge the paternity. He secretly sought blood tests in 1989 that he admitted to willfully choosing not to obtain in 1981. The record in the instant case clearly shows that W.J. has made deliberate choices not to question paternity on several occasions for over a decade. W.J. voluntarily chose to be this child’s legal father in 1981 in spite of his doubts whether he was indeed the biological father of the child. In fact, W.J. has made deliberate choices on several occasions throughout the years of this child’s life to acknowledge and accept some degree of legal paternal responsibilities. During those years, both the child and the mother have relied on the paternity adjudication and WJ.’s willful choice to be identified as the child’s legal father. To allow an informed adult to deliberately choose to come in and out of a child’s life, at will, lies beyond the scope and purpose of the relief contemplated by the extraordinary circumstances provision of Rule 60(b)(6), A.R.Civ.P.
It is also noteworthy that because the trial court denied the child representation in this action, the determination was made with no means for the child to defend against it or contest it to protect his legitimacy. See Ex parte Martin, 565 So.2d 1 (Ala.1989).
The result of the trial court’s action here has allowed bastardization of a child by the only father he has known his entire life and who knowingly and willfully chose to be the child’s legal father many years earlier. The judgment that W.J. is this child’s legal father, which W.J. chose to accept and not appeal, and which the mother and child have both relied upon during all these years, is entitled to finality. Accordingly, this case is hereby reversed and remanded for the trial court to set aside any subsequent orders concerning the issue of paternity.
REVERSED AND REMANDED WITH INSTRUCTIONS.
RUSSELL, J., concurs.
ROBERTSON, P.J., dissents.