MOORE, Judge.
In these consolidated appeals, T.L. (“the mother”) and C.G.W. (“the father”) separately appeal from a judgment entered by the Madison Juvenile Court (“the juvenile court”) denying their respective motions to set aside a September 13, 2012, judgment finding P.S.L. (“the child”) dependent and awarding his custody to W.C.L. and C.S.L. (“the grandparents”). We affirm the judgment.

Background

The child was born out-of-wedlock on September 21, 2008. Although the mother and the father maintained that the child was the biological child of the father,[1] they did not take any steps to establish the paternity of the child through adjudication or legitimation proceedings. On August 6, 2012, the grandparents and the mother filed in the juvenile court a “Joint Petition for Custody” (“the complaint”) in which they stipulated that the child was dependent and that the best interests of the child would be served by placing the child in the custody of the grandparents; that action was assigned case no. JU-12-734.01. In the complaint, the grandparents and the mother alleged that the child had no legal father. That same date, the mother filed a “Consent to Dependency Order and Waiver of Notice” in which she waived notice of any further proceedings and consented to the entry of a judgment finding the child dependent and awarding custody of the child to the grandparents. The juvenile court appointed a guardian ad litem for the child on August 16, 2012. On August 29, 2012, the mother filed a request for the juvenile court to appoint her counsel and executed an “Affidavit of Indigen-cy.” The juvenile court denied the mother’s request, stating, in pertinent part: “The State do[es] not appoint for parents in private cases.” On September 3, 2012, the mother signed an “Acknowledgment of Non-Representation” in which she confirmed that the grandparents’ attorney did not represent her, that she had the right to employ her own attorney, and that she had been advised that it might be in her best interest to employ her own attorney.
On September 4, 2012, the juvenile court conducted a hearing on the complaint. At that hearing, the guardian ad litem filed an “Answer and Initial Report” in which she denied the allegations in the complaint and requested that the father, who she described as a “putative father,” be served so that his paternity and child-support obligation could be established. The guardian ad litem attached to the answer a document, dated August 2012, in which the grandparents agreed to transfer title of a mobile home to the mother and to pay the mother $10,000. The juvenile court also received the acknowledgment of nonrepre-sentation that had been signed by the mother the day before. The mother did not appear at the hearing. According to the guardian ad litem, that hearing lasted approximately five minutes and the juvenile court did not take any evidence. On September 13, 2012, the juvenile court entered a judgment (“the dependency judgment”) adjudicating the child to be dependent, awarding custody of the child to the grandparents, and establishing a visitation schedule for the mother.
*69 On April 9, 2013, the grandparents commenced an action to modify the visitation provisions of the dependency judgment; the modification action was assigned case no. JU-12-734.02. On June 23, 2014, the father filed a motion to intervene and.a motion to set aside the dependency judgment. On June 26, 2014, the mother moved to set aside the dependency judgment. On October 16, 2014, the juvenile court held a hearing on the mother’s and the father’s motions to set aside the dependency judgment. The father, the child’s paternal grandfather, the mother, and the guardian ad litem testified at the hearing. On March 27, 2015, the juvenile court entered a judgment in the dependency action (case no. JU-12-734.01) granting the father’s motion to intervene, adjudicating the paternity of the child in favor of the father, and denying the mother’s and the father’s motions to set aside the dependency judgment.[2] The mother and the father filed separate notices of appeal to this court. The appeals have been consolidated by this court ex mero motu.

Analysis

The Mother’s Appeal

The mother first argues that the juvenile court violated her due-process rights when it entered the dependency judgment without appointing counsel for her. A judgment is void and may be set aside at any time under Rule 60(b)(4), Ala. R. Civ. P., if it was entered in a manner inconsistent with due process. Ex parte Full Circle Distrib., L.L.C., 883 So.2d 638, 641 (Ala.2003).
“The standard of review on appeal from an order granting [or denying] relief under Rule 60(b)(4), Ala. R. Civ. P. (‘the judgment is void’), is not whether the trial court has exceeded its discretion. When the decision to grant or to deny relief turns on the validity of the judgment, discretion has no field of operation. Cassioppi v. Damico, 536 So.2d 938, 940 (Ala.1988). ‘If the judgment is void, it is to be’ set aside; if it is valid, it must stand.... ’ Seventh Wonder v. Southbound Records, Inc., 364 So.2d 1173, 1174 (Ala.1978)....”
883 So.2d at 641. A judgment is entered in a manner inconsistent with due process when the substantive rights of a party are adjudicated without notice or an opportunity to be heard. M.H. v. Jer.W., 51 So.3d 334, 337-38 (Ala.Civ.App.2010).
■ In this case, the mother acknowledges that she expressly consented to the entry of the dependency judgment and that she formally waived her right to notice of the proceedings. that led to the dependency judgment. She asserts, however, that the juvenile court violated her right to appointed counsel. Section 12 — 15—305(b), Ala. Code 1975, provides, in pertinent part:
“In dependency ... cases, the respondent parent ... shall be informed of his or her right to be represented by counsel and, if the juvenile court determines that he or she is indigent, counsel shall be appointed where the respondent parent ... is unable for financial- reasons to retain his or her own counsel.”
The mother argues that, because she proved that she was indigent through the affidavit of indigency that she filed with the juvenile court on August 29, 2012, the juvenile court was required to appoint *70 counsel for her. According to the mother, the juvenile court’s failure to do so caused the dependency judgment to be entered in a manner inconsistent with her due-process rights.
We do not decide whether the juvenile court erred in construing § 12-15 — 305(b) to apply only to dependency cases filed by the State. We hold only that, if the juvenile court erred by not appointing counsel for the mother, as an indigent parent, that error affected only a statutory right and not a constitutional due-process right. “It is well settled that the ‘constitutional due process clause does not require the appointment of counsel for an indigent parent in dependency and temporary custody proceedings.’ ” W.C. v. State Dep’t of Human Res., 887 So.2d 251, 256 (Ala.Civ.App.2003) (quoting Morgan v. Lauderdale Cnty. Dep’t of Pensions & Sec., 494 So.2d 649, 651 (Ala.Civ.App.1986), citing in turn Lassiter v. Department of Social Servs. of Durham Cnty., North Carolina, 452 U.S. 18, 34, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). More particularly, in Lassiter, the United States Supreme Court held that the Due Process Clause does not require the appointment of counsel in a child-deprivation proceeding in which the parent does not contest custody and expresses an intention not to attend or to participate in the proceedings. 452 U.S. at 32. Based on the circumstances of this case, the juvenile court did not offend the due-process rights of the mother by failing to appoint counsel for her during the initial dependency proceedings.
Because the dependency judgment was not entered in a manner inconsistent with due process, the juvenile court did not err in denying the mother’s Rule 60(b) motion to set aside that judgment based on her lack of appointed legal representation. Furthermore, we note that, if the juvenile had violated the mother’s statutory rights under § 12 — 15—305(b), any such violation could have been remedied only by appeal. See Morgan, supra. A Rule 60(b) motion cannot be used as a substitute for appeal, “nor is it available to relieve a party from its own deliberate choices.” State ex rel. G.J. v. W.J., 622 So.2d 353, 356 (Ala.Civ.App.1992). The mother did not appeal from the dependency judgment, and she cannot now use Rule 60(b) to impermissibly collaterally attack that judgment. Morgan, supra.
The mother next argues that the dependency judgment is void because it rests on her agreement to give the grandparents custody of the child in exchange for a mobile home and $10,000. We need not address the merits of this contention because the mother failed to prove that any such agreement existed. The record contains a document whereby the grandparents agreed to pay the mother $10,000 and to transfer title of a mobile home to her. As the juvenile court determined, that document does not contain any promise by the mother to give the grandparents custody of the child or to capitulate to their custody demands for the child. The document does not even mention the child. Based on the lack of evidence to substantiate the mother’s claim, the juvenile court reasonably could have determined that the grandparents had not unlawfully procured the mother’s consent to the dependency judgment through payment of monetary and other consideration. See Allsopp v. Bolding, 86 So.3d 952 (Ala.2011) (holding that, when a trial court makes factual findings in a Rule 60(b) hearing, those findings are afforded a presumption of correctness on appeal).
For the foregoing reasons, we affirm the judgment of the juvenile court insofar as it denied the mother’s Rule 60(b) motion.

*71
The Father’s Appeal

In addition to the arguments we have already rejected above, the father argues that the dependency judgment is void because the juvenile court failed to serve him with the complaint. Section 12-15-122, Ala.Code 1975, and Rule 13(A)(1), Ala. R. Juv. P., require á juvenile court to issue a copy of the complaint to the “parents” of the child alleged to be dependent. “Parent” is defined as “[t]he legal mother or the legal father of a child under the jurisdiction of the juvenile court pursuant to [§ 12-15-101 et seq., Ala.Code 1975].” Ala.Code 1975, § 12-15-102(19). The Alabama Juvenile Justice Act, Ala.Cod'e 1975, § 12-15-101 et seq., does not further define the term “legal father,” but elsewhere in the Code that term refers to a -man whom the law recognizes as the “presumed father” of the child. See Ala.Code 1975, § 26-17-102(17). Thus, in a dependency proceeding, a juvenile court must serve the complaint and summons on the presumed father of a child.
At the evidentiary hearing on his motion, the father introduced evidence indicating that, at the time of the filing of the complaint, he had received the child into his home and had openly held the child out as his natural child such that he had become a presumed father of the child under Ala.Code 1975, § 26-17-204(a)(5). The father maintained that, as a presumed father, he was an indispensable party to the dependency proceedings and that, without service upon him, no valid judgment could be entered adjudicating the dependency of the child. It is undisputed that the juvenile court did not issue summons and serve a copy of the complaint upon the father before entering the dependency judgment.
Although the father relied on Rule 60(b)(4) throughout this case, we conclude that Rule 13(A)(5), Ala, R. Juv. P., controls. See Campton v. Miller, 19 So.3d 245, 249 (Ala.Civ.App.2009) (“Our caselaw is clear, however, that it is the substance of a motion, not its nomenclature, that is controlling; ‘the relief sought, in a motion determines how to treat the motion.’” (quoting Allied Prods. Corp. v. Thomas, 954 So.2d 588, 589 n. 3 (Ala.Civ.App. 2006))). Rule 13(A)(5) provides:
“A party not served under this rule may, for good cause shown, petition the juvenile court in writing for a modification of any order or judgment of the juvenile court. The juvenile court may dismiss this petition if, after a preliminary investigation, the juvenile court finds that the petition is without substance. If the juvenile court finds that the petition should be reviewed, the juvenile court may conduct a hearing upon the issues raised by the petition and may make any orders authorized by law relative to the issues as it deems proper.”
In Limestone County Department of Human Resources v. Long, 182 So.3d 541, 544 (Ala.Civ.App.2014), this court held that, “[w]hen a party asserts that a juvenile court erred by not joining it as a party to a juvenile proceeding, that party must follow the procedure established in Rule 13(A)(5), Ala. R. Juv. P., in order to obtain relief from an order of the juvenile court.”[3]
*72 In this case, the juvenile court conducted an evidentiary hearing. Although, from the perspective of the father, - that healing focused on his status as a presumed father with a right to service, the juvenile court also received testimony regarding the circumstances of the father at the time of the initial dependency proceedings. The mother testified that, when the dependency proceedings were pending, she and the father were separated and that she was acting as the only parental custodian of the child. The father testified that, at the time of the entry of the dependency judgment, he was in jail and that “[he] wasn’t stable at that time.” The father further testified that, after learning that the grandparents had obtained custody of the child, he had been unable to take any legal action to assert his paternity of, and to gain custody of, the' child because of his poor financial circumstances. From that testimony, it is apparent that the father does not dispute that he was in no position to properly care for the child in' August 2012. Thus, his appearance in the dependency proceedings would not have altered the dependency determination. See Ala. Code 1975, § 12-15-102(8) (defining “dependent child”), and Ex parte L.E.O., 61 So.3d 1042, 1047 (Ala.2010) (holding that a child is dependent if the person with the legal obligation to care for and supervise the child cannot adequately discharge those duties). Furthermore, the father introduced no evidence disputing that the best interests of the child had been served by the child’s being placed in the custody of the grandparents in August 2012.
Under the circumstances, the juvenile court would have been correct, as a matter of law, in dismissing the father’s motion to set aside the dependency judgment pursuant to Rule 13(A)(5) as being “without substance.”[4] We realize that the juvenile court did not follow that reasoning, but we may affirm a judgment on any valid legal ground, even if it is one not considered by the juvenile court. Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). On that basis, we -affirm, the judgment of the juvenile court denying the father’s motion to set aside the dependency judgment.
For the foregoing reasons, the judgment of the juvenile court is affirmed.
2140499 — AFFIRMED.
2140500 — AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. Shortly after the child was born, another man who had been sexually active with the mother near the time of the conception of the child filed a paternity action. Genetic testing excluded him as the father of the child, and the paternity action was dismissed.

. The juvenile court originally entered its judgment in the grandparents’ visitation-modification action, i.e., case no. JU-12-734.02, apparently because the father had mistakenly filed his motions in that action. The juvenile court later vacated that judgment, ordered that the father's motions be transferred to the original dependency action, i.e., case no. JU-12-734.01, and entered an identical judgment in casé no. JU-12-734.01 on March 17, 2015.

. We note that Rule 13(A)(5) does not contain any particular time requirement, so the law implies that a motion filed pursuant to the rule should be filed within a reasonable, time. See generally Wilson v. Wright, 568 So.2d 834, 835 (Ala.Civ.App.1990) (holding that, in the absence of a specific limitations period, a petition for a writ of mandamus must be filed within a reasonable time). In this case, the father, who was fully aware of the dependency judgment, waited almost two years to file his motion to set aside the dependency judgment, during which time the child, who was born in September 2008, had presumably adjusted to his custodial arrangement with the grandparents. Arguably, the father’s motion *72 was due to be dismissed due to untimeliness, but we do not reach that issue because we decide the case on a different ground.

. The father argues that the failure of the juvenile court to provide him notice and an opportunity to be heard before entering the dependency judgment violates his constitutional rights, but he did not make that specific constitutional argument to the juvenile court, so we do not consider that issue. See Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala.1991) ("In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to' and reviewed by the trial court. Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated.’’).