PER CURIAM.
B.J. ("the mother") gave birth to A.R. ("the child") in 2011. The mother was never married to the child's father, M.R. ("the father"). Four months after the child was born, the mother began a romantic relationship with T.J. ("the stepfather"), whom she eventually married. In May 2015, the mother was seriously injured in an automobile accident. While the mother was in the hospital, her mother, C.A. ("the grandmother"), filed a petition in the Houston Juvenile Court ("the juvenile court") seeking an award of emergency custody of the child. That action was assigned case no. JU-15-293.01 ("the .01 action"). The grandmother asserted that she and the stepfather could care for the child and that the emergency-custody order should be entered "without notice to the natural father" who, she claimed, had had no contact with the child since she was an infant, had refused to pay child support, and had refused to submit to a paternity test. She alleged that the father was a convicted felon on parole and that his whereabouts were unknown, but she stated that he was thought to be in the Dothan area.
As a result of her injuries, the mother died in June 2015. The record demonstrates that the juvenile court awarded the grandmother and the stepfather[1] joint custody of the child pendente lite, and, on August 27, 2015, the juvenile court entered an "order on information" that recounts that a hearing was held on August 27, 2015, at which it considered "testimony and evidence presented." No transcript of that hearing -- or of any other hearing -- appears in the record on appeal. The juvenile court ordered the grandmother to provide an acknowledgment-of-paternity document that had been executed by the father, and the grandmother did so.
On August 31, 2015, the juvenile court entered a judgment in the .01 action ("the dependency judgment") finding the child *848 dependent based upon its findings that the mother was deceased and that the father had abandoned the child. It awarded joint custody of the child to the grandmother and the stepfather. No appeal was taken from the dependency judgment. The father was not a party to the .01 action at that time.
The record contains an order entered on May 3, 2016, which indicates that the father had unexpectedly appeared before the juvenile court at a hearing held in a custody-modification action filed by the stepfather, which action had been assigned case no. JU-15-293.02 ("the .02 action").[2] The juvenile court indicated in the May 3, 2016, order that the father requested a hearing and that it had set a hearing and ordered him to submit to a drug screen and a home study. On May 5, 2016, the juvenile court held another hearing, after which it entered an order indicting that it had held a "72-hour hearing" in the .01 action and a "review hearing" in the .02 action. That order further indicated that the parties were to continue to adhere to a visitation order that had been entered in the .02 action and that the father was to have visitation as agreed by the parties. Finally, the May 5, 2016, order indicated that the case was set for a hearing on July 28, 2016, for "adjudication as to father" in the .01 action and for "modification, if necessary," in the .02 action.
The juvenile court continued the July 28, 2016, hearing to August 31, 2016, after which the juvenile court entered an order stating that the parties had reached a pendente lite agreement, requiring that a proposed order memorializing the pendente lite agreement be submitted within 14 days, and continuing the disposition hearing in the .01 action to February 23, 2017. On September 14, 2016, the juvenile court entered the pendente lite order, which, by agreement of the parties, awarded the grandmother temporary "primary" physical custody of the child and awarded temporary joint legal custody of the child to the grandmother, the father, and the stepfather; the order further awarded the father and the stepfather certain weekend visitation with the child pendente lite, and it reiterated the date for the disposition hearing. The February 2017 hearing was continued and reset for May 18, 2017, after which the juvenile court entered an order continuing the case to July 14, 2017, "for attorneys to brief issues [that had been] presented in open court" at the May 18, 2017, hearing. The record contains no transcript of the May 18, 2017, hearing, and we are therefore not privy to the issues raised at that hearing.
In apparent compliance with May 2017 order, the grandmother, the stepfather, and the father filed briefs. In her brief, the grandmother outlined the procedural history of the .01 action; stated that, at the May 2017 hearing, she had requested that her petition in the .01 action be withdrawn because, she asserted, the child was no longer dependent based on the ability of the father to serve as her custodian; and argued that the dependency judgment was void because the father had not been served with the petition in the .01 action. The grandmother specifically referenced Rule 60(b), Ala. R. Civ. P., in her brief. The father's brief is entitled "Brief in Support of Father's Motion to Set Aside the Court's Determination of Dependency on Petition .01" and, like the brief of the *849 grandmother, argued that the dependency judgment was void for lack of service upon him. In his brief, the stepfather argued that, pursuant to Rule 13(A)(3), Ala. R. Juv. P., the juvenile court had correctly proceeded with the dependency adjudication in the .01 action despite the fact that the father had not been served because the grandmother's verified petition had indicated that his whereabouts were unknown to her. Furthermore, the stepfather pointed out that Rule 13(A)(5), Ala. R. Juv. P.,[3] provides that a party who was not served in an action can seek modification of a judgment of the juvenile court in that action, which, the stepfather contended, the father had not done; in addition, the stepfather noted that the father had not filed any timely motion pursuant to Rule 60(b) requesting relief from the dependency judgment.
On August 28, 2017, the juvenile court entered an order in the .01 action in which it determined that the dependency judgment was a final judgment; thus, it concluded, it had lacked subject-matter jurisdiction to enter any valid order in the .01 action after the entry of the dependency judgment. The juvenile court also stated that the father was permitted to seek a modification of the dependency judgment pursuant to Rule 13(A)(5), Ala. R. Juv. P.
On September 12, 2017, the father filed a notice of appeal to this court and a motion seeking a free transcript of the proceedings in the .01 action.[4] Although the juvenile court granted the father's request for a free transcript, the record contains a later notice from the juvenile court that reads, in pertinent part: "[T]here is no record (transcript) for appeal other than the clerk's record as the time period for appeal has run." The father requested a clarification regarding whether no recording existed or whether no transcript existed, or, in the alternative, he requested a certification as to whether there existed an adequate record for appeal. See Rule 28A(1)(c)(i), Ala. R. Juv. P. The juvenile court entered an order determining that the record was not adequate for appeal. Therefore, on October 17, 2017, this court transferred the appeal to the Houston Circuit Court ("the circuit court") for a trial de novo, pursuant to Rule 28(D), Ala. R. Juv. P.
Upon its transfer to the circuit court, the appeal was assigned case no. JU-15-293.03 ("the de novo appeal"). On November 13, 2017, circuit court set the de novo appeal for a trial to be held on January 24, *850 2018. The grandmother filed a motion in the circuit court in the de novo appeal seeking a dismissal of the .01 action and of the .02 action. The circuit court entered an order on February 7, 2018, which set a hearing date to consider all pending motions, to determine whether "the appeal filed to the circuit court as to the .01 action was timely," and to determine whether the circuit court "has the authority to hear the .02 petition" based upon, among other things, the issue of finality. On February 21, 2018, the circuit court entered an order instructing the parties to prepare to argue whether the circuit court "shall conduct a trial de novo or whether the circuit court shall review only the juvenile court's ruling as to the [ Rule] 60(b) motion."[5]
On February 28, 2018, the circuit court held a motion hearing at which no testimony was offered.[6] On March 2, 2018, the circuit court entered an order in which it summarized the procedural history of the matter. The circuit court noted that no appeal had been taken from the .02 action (presumably because no final judgment had been entered in the .02 action); however, it determined that a final judgment had been entered in the .01 action on August 31, 2015. The circuit court concluded that the juvenile court's August 28, 2017, order "simply recognized that the [dependency judgment] was, and had always been, a final [judgment]." The circuit court specifically found that the father had not challenged the dependency judgment in the juvenile court by way of a Rule 60(b) motion and noted that the father's attorney had admitted at the February 2018 hearing before the circuit court that the father had not filed a Rule 60(b) motion and, despite the fact that the father's brief filed in response to the juvenile court's May 2017 order had challenged the validity of the dependency judgment, had not claimed that the father's brief filed in the juvenile court should be construed as a Rule 60(b) motion. The circuit court also rejected the argument that certain language written on the juvenile court's May 5, 2016, order had effectively set aside the dependency judgment and stated that the juvenile court had never set aside the dependency judgment. Thus, on March 2, 2018, the circuit court dismissed the de novo appeal of the .01 action and remanded the action to the juvenile court.
The father filed a timely notice of appeal of the circuit court's March 2, 2018, order in the de novo appeal. The father argues that the circuit court erred by refusing to conduct a de novo trial, that the circuit court erred by certifying the record in the de novo appeal as adequate for appeal, and that the circuit court erred by concluding that his appeal to this court of the juvenile court's August 28, 2017, judgment was an untimely appeal from the dependency judgment. Our review is de novo.
"The question whether [a lower] court has acquired subject-matter jurisdiction over [an] appeal is an issue of law; thus, we review de novo the dismissal of the appeal by the circuit court. Ex parte Terry, 957 So.2d 455 (Ala. 2006) (stating that a claim that a court lacks subject-matter jurisdiction presents a question of law, which an appellate court reviews de novo)."
*851 Banks v. Estate of Woodall, 129 So.3d 294, 295-96 (Ala. Civ. App. 2013).
We agree with the circuit court that the dependency judgment is a final judgment. However, we do not agree that the circuit court lacked jurisdiction over the father's appeal from the August 28, 2017, order of the juvenile court. Although the father did not file a Rule 60(b) motion in the .01 action, his June 2017 filing should have been considered a Rule 13(A)(5) motion seeking a modification of the August 31, 2015, dependency judgment, which, in this particular instance, is the correct vehicle for the father's challenge to the dependency judgment. See Limestone Cty. Dep't of Human Res. v. Long, 182 So.3d 541, 544 (Ala. Civ. App. 2014) (holding that "[w]hen a party asserts that a juvenile court erred by not joining it as a party to a juvenile proceeding, that party must follow the procedure established in Rule 13 [ (A) ](5), Ala. R. Juv. P., in order to obtain relief from an order of the juvenile court."). The father's June 2017 filing alleged that the juvenile court's dependency judgment was void because it had been entered without having perfected service on him; thus, his filing is, in effect, a motion for modification under Rule 13(A)(5). See T.L. v. W.C.L., 203 So.3d 66, 71 (Ala. Civ. App. 2016) (concluding that a Rule 60(b) motion filed by a father who had not been served in a dependency action involving his child was a Rule 13(A)(5) motion for modification).
Because the father's June 2017 filing was, in effect, a Rule 13(A)(5) motion, the juvenile court's August 28, 2017, order, by indicating that it lacked jurisdiction to enter further orders in the .01 action effectively dismissed the father's Rule 13(A)(5) motion without considering its merits. The August 28, 2017, order was therefore a final judgment capable of supporting the father's appeal, and the circuit court erred by concluding otherwise. The circuit court's March 2, 2018, order dismissing the father's appeal from the August 28, 2017, order of the juvenile court is therefore reversed, and the cause is remanded for the circuit court to consider the merits of the father's appeal from the dismissal of his Rule 13(A)(5) motion.
REVERSED AND REMANDED.
Thompson, P.J., and Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Although the stepfather's motion to intervene is not included in the record, the parties agree that the juvenile court had granted the stepfather's motion to intervene in the matter.

The record does contain the orders entered by the juvenile court in the .02 action. In order to aid in our understanding of the proceedings in the juvenile court, we requested that the record be supplemented with the State Judicial Information System case-action-summary sheet from the .02 action, and it reveals that no final judgment has been entered in that action.

The stepfather cited former Rule 27, Ala. R. Juv. P., in his brief. The text formerly contained in Rule 27 is now contained in Rule 13(A)(5), which reads as follows:
"A party not served under this rule may, for good cause shown, petition the juvenile court in writing for a modification of any order or judgment of the juvenile court. The juvenile court may dismiss this petition if, after a preliminary investigation, the juvenile court finds that the petition is without substance. If the juvenile court finds that the petition should be reviewed, the juvenile court may conduct a hearing upon the issues raised by the petition and may make any orders authorized by law relative to the issues as it deems proper."

Because the Houston Circuit clerk's office was closed by order of the governor on September 11, 2017, due to inclement weather expected from Hurricane Irma, the father's notice of appeal was timely filed on September 12, 2017. See Rule 6(a), Ala. R. Civ. P. ("The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period runs until the end of the next day that is not one of the aforementioned days.").

We presume that the Rule 60(b) motion to which the circuit court referred was the grandmother's brief filed in response to the juvenile court's May 2017 order, which invoked that rule.

The circuit court entered an order explaining that, although it had heard arguments of counsel at the hearing and had made an audio recording of the hearing, it had inadvertently deleted the recording.